<hr />

[No. 19255. Department One.—January 26, 1894.]

JOHN H. BURNHAM ET AL., RESPONDENTS, *v.* LEVI P. STONE ET AL., DEFENDANTS, JAMES STONE, APPELLANT.

WRIT OF RESTITUTION—DESCRIPTION.—A description which will enable the officer executing a writ of restitution to clearly identify the premises, is sufficient; and a writ describing the land by reference to a "dwelling-house, honey-house, and chicken-house thereon," as matter of law covers the land on which they are situated, notwithstanding an erroneous description by government subdivisions.

ID.—ACTION FOR DEATH—PROTECTION OF OFFICER EXECUTING WRIT.— A constable and his posse executing a writ of restitution, have a right to regard a description of the premises by survey as erroneous, and to execute it upon the premises identified by the buildings thereon, and are protected by the writ against any action for a death justifiably caused in its enforcement.

ID.—APPEAL—OBJECTION FOR FIRST TIME—PLEADING—JUSTIFICATION OF MEMBER OF POSSE.—Upon appeal by a member of the constable's posse who did not formally by his answer justify under the writ and command of the constable, where the record shows that the defendants generally did plead the writ and justification, and discloses no objection made by the plaintiff to the evidence tending to show justification under the writ, nor any request that instructions to the jury be restricted to those defendants who had pleaded the writ, and shows that appellant was allowed to testify without objection that he was required to help the constable in enforcing the writ, the plaintiff is estopped from raising an objection to the pleading for the first time upon appeal, and the

appellant is entitled to review the instructions of the court relating to justification under the writ and command of the officer.

ID.—TRESPASS—ASSAULT AND BATTERY—FORCIBLE ENTRY OF OWNER OF LAND.—If the owner of land wrongfully held by another enters and expels the occupant, but makes use of no more force than is reasonably necessary to accomplish this, he will not be liable to an action of trespass, nor for assault and battery, nor for injury to the occupant's goods, although, in order to effect such expulsion and removal, it becomes necessary to use such force and violence as to subject him to indictment for a breach of the peace, or to make him liable under the statute for a forcible entry.

ID.—ERRONEOUS INSTRUCTION—LIABILITY FOR DAMAGES.—An instruction that the entry of the owner upon the premises by force or show of force, was unlawful, and that if appellant aided and abetted such entry, he was liable for the death of a person killed in connection with the entry, though he did not aid, abet, advise, or encourage the actual killing, is erroneous, not being qualified by the statement that no liability for damages was created against any of the defendants for the entry upon the land, nor for the expulsion or attempt at expulsion of the occupants by force, unless more force or violence was used than was reasonably necessary.

ID.—INSTRUCTION CUTTING OFF SUBSTANTIAL DEFENSE.—Where an erroneous instruction cuts off a substantial defense on the merits, the rule that the verdict being right upon the evidence, the judgment should not be reversed because of an erroneous instruction, has no application.

ID.—FRAUDULENT JUDGMENT FOR POSSESSION—OFFICER NOT TRESPASSER. The fact that a judgment for the possession of real property is fraudulently obtained does not render an officer a trespasser who executes a writ, regular on its face, issued on such judgment.

APPEAL from an order of the Superior Court of San Diego County, denying a new trial.

The facts are stated in the opinion.

*Luce & McDonald,* for Appellant Stone.

*Works & Works,* and *Haines & Ward,* for Respondents.

HAYNES, C.—Appeal from an order denying the motion of the defendant, James Stone, for a new trial.

The action was brought by John H. Burnham and his two minor children to recover damages for the alleged wrongful killing of Jenny Burnham, the wife of the plaintiff, John H. Burnham, and the mother of the minor plaintiffs.

The third paragraph of the complaint is as follows:

" That on the eighteenth day of January, 1888, the said defendants, Levi P. Stone, James Stone, George Morris, D. M. Breedlove, Arch Freeman, and W. H. H. Dinwiddie, maliciously, willfully, fraudulently, and unlawfully contriving, conspiring, and confederating together to attack, assault, and remove with force and arms, one Elizabeth Goings and one Percy Goings from their prior and peaceable possession and occupation of the following described lands and the dwellings thereon, situated in said county of San Diego, state of California, to wit:

" The southeast quarter of the northwest quarter of section five (5), in township eleven (11) south, of range two (2) west, San Bernardino meridian; did then and there, in the prosecution of their said malicious, willful, fraudulent, and unlawful conspiracy and confederation, enter upon said premises with force and deadly weapons, and did there willfully and maliciously attack, assault, and shoot to death the said Jenny Burnham, then lawfully and peaceably being upon the said premises."

All the defendants, except Freeman, answered, appellant answering separately.

The only error assigned is that the court erred in its instructions to the jury given at plaintiff's request.

An outline of the facts in the case, so far as they appear to be uncontroverted, is as follows: That Levi P. Stone, one of the defendants, was the owner of the southeast quarter of the northwest quarter of section 5, in a given township and range, upon which there was a dwelling-house, a honey-house, and a chicken-house; that during his temporary absence Elizabeth Goings and her son, Percy Goings, entered upon said premises and took possession, claiming that it was government land and open to settlement, and refused to deliver possession to Stone upon his demand. Afterwards Stone commenced an action in forcible entry and detainer against said Elizabeth and Percy Goings before a justice of the peace, and in his complaint described the land as the southwest quarter of the northeast quarter, and north half of southeast quarter, and southeast quarter of south-

east quarter of section 5, but before the trial he amended the complaint, as to the description, so as to read:

" That at the time hereinafter mentioned, and for eight years prior thereto, he was in the peaceable and actual possession and occupation, and entitled to the possession, of all that certain piece, parcel, and tract of land described as follows, to wit: South half of northeast quarter, and north half of southeast quarter of section 5, in township 11 south, range 2 west, San Bernardino meridian, and comprising one hundred and sixty acres of land, and of the dwelling-house, honey-house, and chicken-house thereon."

As a matter of fact these buildings were on the southeast quarter of the northwest quarter of the section.

Upon the trial the plaintiff, Levi P. Stone, had judgment for the restitution of the premises described in the amended complaint, and a writ of restitution, "in due and sufficient form," was issued thereon, and delivered to the defendant, D. M. Breedlove, a constable, for service. The writ is not set out in the record, and whether it contains the added description of the buildings does not appear with certainty. The statement simply says: " The judgment and writ followed the description of the premises given in the amended complaint." The constable then went to the premises on which the buildings were, and which were occupied by the Goings, and demanded that they vacate the premises, but they refused to do so. The constable then left, saying he would be back in the afternoon. About two o'clock he returned with Levi P. Stone, James Stone, and another, and found Mrs. Burnham, Mrs. McConnehey, Percy Goings, and Mrs. Goings in the house, with the doors barred, and said they would not go off. The constable then told them that if he had to put them off by force he would try and get enough to do it next morning. The next day, January 17, 1888, he returned with Levi P. Stone, James Stone, Arch Freeman, George Morris, and Stockman Reed, and in the effort to execute the writ, or to obtain possession, Stockman Reed, one of the constable's

*posse,* and Percy Goings, John McConnehey, and Mrs. Burnham were killed, or mortally wounded. The jury returned a verdict against all the defendants for thirty thousand dollars actual damages, and in addition thereto, against Levi P. Stone, ten thousand dollars, and against this appellant for two thousand dollars, exemplary damages.

So far as the record discloses, no question seems to have been made but that the defendants would have been justified in all that they did if the judgment and writ of possession had described the subdivision of the section upon which the buildings occupied by the defendants in the writ were situated.

Respondents contend, however, that as appellant did not by his answer justify under the writ and command of the constable that the question of the sufficiency of the writ is immaterial. It clearly appears from the instructions given to the jury at plaintiff's request that the defendants, no exception being named, did plead the writ in justification; and the record discloses no objection made by plaintiffs to the evidence tending to show justification under the writ, nor any request that it be restricted to those defendants who had pleaded the writ. Under these circumstances, appellant contends that respondents are estopped from raising the question upon appeal. Appellant testified, without objection, as follows:

"The way I happened to go at that time was that Constable Breedlove required me to go help him dispossess the Goings under a writ that had been issued to him as constable of Bear Valley township, and I went in accordance with his command." We think that appellant's contention upon this point must be sustained, under the authority of *Murdock* v. *Clarke,* 90 Cal. 431, and if so, that he is entitled to review the instructions of the court relating to justification under the writ and the command of the officer.

The complaint alleged and the defendants conceded that the premises occupied by the Goings was the south-

east quarter of the northwest quarter, and the record shows without qualification or contradiction that the defendant, Levi P. Stone, was the owner of it, and had been in possession of it for seven or eight years prior to the entry of the Goings, who entered unlawfully during his temporary absence.

The instructions are too long to copy in full in this opinion, but in substance the jury were instructed at the request of plaintiffs that in going upon the land for the purpose of obtaining possession by force, or show of force, all the defendants were trespassers and their entry unlawful, and because thereof each defendant was liable for the killing of Mrs. Burnham, although the killing was not intended, contemplated, aided, abetted, or advised by him; that if he aided, abetted, or encouraged the unlawful entry upon the premises it was sufficient to fix his liability, and that such entry was unlawful unless the writ of possession covered or included the premises where the homicide occurred; but did not instruct the jury whether, as matter of law, the reference to the buildings thereon, in the description of the premises contained in the writ, if it did contain such description, did or did not so control the erroneous description by the subdivisions of the government survey as to include the buildings where the homicide occurred, and operate as a justification to the officer and all who acted under his authority, but on the contrary, expressly left the jury to find whether the writ did cover the property where the shooting occurred.

The jury were further instructed that if they found that Levi P. Stone testified before the justice of the peace that said buildings were on unsurveyed land, and that he knew at that time that the buildings were on the southeast quarter of the northwest quarter, and if they should further find that but for such testimony he would have been unable to obtain such verdict and to recover such judgment, and that he and the other defendants entered under color of said writ, and in the attempt to execute the same Mrs. Burnham was

killed, that not only was said writ of restitution no justification to any of the defendants engaged in such undertaking, but that they were authorized to infer express malice on the part of Levi P. Stone, and to consider such conduct on his part as one of the circumstances to be taken into account in fixing the damages as against him.

These instructions were erroneous in several particulars. Assuming that the writ of restitution contained the added description of the land by reference to the "dwelling-house, honey-house, and chicken-house thereon," the court should have instructed the jury, as matter of law, that such description included and covered the land on which they were situated, notwithstanding the erroneous description by government subdivisions.

Any description which will enable the officer executing the writ to clearly identify the premises is sufficient. Freeman on Execution, 2d edition, section 471, in speaking of writs of possession, declares this to be the general rule. In *Lawrence* v. *Davidson*, 44 Cal. 177 (an action of ejectment) the court said: "We cannot see upon the record that the description of the excepted tract is necessarily impossible or incapable of identification in the field. The bay of San Francisco is an object referred to; the 'Dows claim' and the 'Fairbanks claim,' which may, so far as we know, be well-ascertained objects, are mentioned too." (See also *Helm* v. *Wilson*, 76 Cal. 476.) No more satisfactory means of identifying the property could ordinarily be given than the description of the three buildings mentioned.

It could not be expected or intended that the constable should survey the lands for the purpose of identifying them, and even if he had done so he had a right to regard the description by survey as erroneous, and to execute the writ upon the premises identified by the buildings.

In view of a new trial and of the possibility that the writ does not refer to the buildings as a part of the de-

scription of the land, it becomes necessary to consider the instructions upon the supposition that the writ did not cover the premises from which it was attempted to evict the defendants in the writ.

In such case the instructions were also erroneous. It is conceded that Levi P. Stone was the owner of the buildings and premises where the homicide occurred, and that he had a right to the possession at that time. Mrs. Burnham made no claim that she was entitled to the possession. Her mother and brother were in possession, and the record shows that when the constable, after demanding that they vacate the premises the morning of the day before the homicide, and being met with a refusal, returned in the afternoon and found Mrs. Burnham there with the others in the house and with the doors barred. She was also there when the constable and owner of the premises returned the next day with the *posse*, and at least aided and abetted her mother and brother in retaining possession. Under these circumstances, if she had survived, she could not have maintained an action for assault and battery, or for any injury she might have sustained in an endeavor of the owner to obtain possession, even if the effort were forcible.

In *Canavan* v. *Gray*, 64 Cal. 5, it was held that where the owner of real property having the right of possession makes a forcible entry, the person in wrongful possession cannot maintain an action of trespass; that the remedy provided by statute for a forcible entry is exclusive.

This case is amply sustained by the authorities upon that subject. Washburn on Real Property, *396, after quoting the modern English doctrine as expressed by Baron Parke, says:

"And the law, as generally adopted in the United States, may be assumed to be substantially as laid down by Baron Parke. If the owner of land wrongfully held by another enter and expel the occupant, but makes use of no more force than is reasonably necessary to ac-

complish this, he will not be liable to an action of trespass *quare clausum,* nor for assault and battery, nor for injury to the occupant's goods, although, in order to effect such expulsion and removal, it becomes necessary to use so much force and violence as to subject him to indictment at common law for a breach of the peace, or under the statute for making forcible entry."

The same author adds: "The uniform current of authority in the United States sustaining the same doctrine is broken only by the decisions in Vermont and Illinois."

The general ground upon which these authorities are based is that at common law trespass would not lie against the owner, if he were entitled to the possession, as in such case the person in possession, being in wrongfully, could maintain no action against the owner, unless unnecessary force was used, and that the statutes of forcible entry and detainer having provided a remedy in such cases, that remedy is exclusive so far as the wrongful possessor is concerned; but the public being interested in preserving the peace may punish the owner for resorting to force. *Canavan* v. *Gray*, 64 Cal. 5, proceeds upon this ground. In *Jackson* v. *Farmer*, 9 Wend. 201, it is said:

"Statutes of forcible entry and detainer punish criminally the force, and in some cases make restitution of the possession" (11 Johns. 509; 13 Johns. 340); "but, so far as the civil remedy is concerned, there is none but what is afforded by those acts." (See also *Low* v. *Elwell,* 121 Mass. 309; 23 Am. Rep. 272; *Souter* v. *Codman,* 14 R. I. 119; 51 Am. Rep. 364, and notes; *Stearns* v. *Sampson,* 59 Me. 569; and 4 Am. Law Rev. 429.) In *Kellam* v. *Janson,* 17 Pa. St. 469, it is said: "An action is well founded only when a right is invaded; but the plaintiff's right ceased by the entry of the defendant— an act that completely obliterated the shadow of right cast by the plaintiff's possession. A complaint against the assumption of possession is a complaint against the assertion of a right, and a demand that the law shall

give the plaintiff damages for the loss of that which it was wrong in him to have." In *Sterling* v. *Warden*, 51 N. H. 232, it is said: "It is clearly the English law, and as we believe the strongly preponderating opinion of the American courts, that no civil action lies against a landlord for regaining with force the possession of the demised premises, unless there is an excess of force, and then only for such excess."

In the light of these authorities the instruction that the entry upon the premises by force, or show of force, was unlawful, and that if appellant aided and abetted such entry that he was liable for the death of Mrs. Burnham, though he did not aid, abet, advise, or encourage the actual killing, is erroneous. No liability for damages was created against any of the defendants for the entry upon the land, nor for the expulsion, or attempted expulsion, of the occupants by force, unless more force or violence was used than was reasonably necessary, and no such qualification appears in the instructions given to the jury. It is quite true that appellant did not, in his answer, plead the ownership and right of entry of Levi P. Stone. The case was tried, however, without any apparent reference to the issues made by appellant's answer, and all the facts were given in evidence without objection or limitation. The court stated to the jury the substance of the complaint, that all the defendants, except Freeman, had answered denying the allegations of the complaint, and alleging that Mrs. Burnham and others acting with her first assaulted them; that they used no more force than was necessary to protect themselves from injury, and also alleged facts tending to justify themselves under the writ of restitution. The jury were expressly instructed that the question of the title to the land was not before them; that " admitting that Stone was the owner of the land, and that Mrs. Goings was wrongfully in possession of it, this gave Stone, or anyone acting with or for him, no right to enter upon the land by force, or show of force, and take possession of it, or exclude or remove

Mrs. Goings or anyone else from the land; and if you find that the defendants went upon the land in the manner and for the purpose mentioned, their entry was unlawful, unless justified for other reasons, and the defendants would be liable for the consequences resulting therefrom."

Counsel for respondents suggest that the verdict being right upon the evidence, the judgment should not be reversed because of an erroneous instruction. That there are cases where the judgment should stand notwithstanding an erroneous instruction is not questioned; but where the erroneous instruction is such as to cut off a substantial defense on the merits the rule suggested can have no application. The case was not tried upon a theory which would justify this court in looking at the evidence to determine whether unnecessary force was used by the defendants, and that became a vital question, assuming that the writ did not cover the premises upon which the entry was made by them.

The jury were also instructed in substance that if Levi P. Stone obtained his verdict and judgment before the justice by false swearing that the writ was no protection to the defendants. But the fact that a judgment is fraudulently obtained does not render the officer a trespasser who executes a writ, regular on its face, issued on such judgment. (*Simms* v. *Slacum*, 3 Cranch, 300.) The question as to its effect upon the defendant, Levi P. Stone, is not pertinent here.

No other questions need be noticed.

The order appealed from should be reversed, and a new trial granted.

VANCLIEF, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is reversed, and a new trial granted.

HARRISON, J., PATERSON, J., McFARLAND, J.