[S. F. No. 3603.   Department One.—January 19, 1907.]

## MILWAUKEE MECHANICS' INSURANCE COMPANY, Appellant, v. A. M. WARREN et al., Defendants; J. B. LANKTREE et al., Respondents.

ACTION ON BOND OF INSURANCE AGENTS—FINDINGS AGAINST EVIDENCE—NEW TRIAL.—In an action by an insurance company on the bond of its agents for insurance moneys collected and not paid over, where the judgment was for the defendants, *held*, upon review of the evidence, on motion for new trial, that the findings that the insurance agents had accounted for and paid over all moneys belonging to the plaintiff, had no substantial support in the evidence, which clearly showed, without conflict, that they were indebted to the plaintiff in a considerable sum for moneys actually received and not accounted for; and the new trial must be granted.

ID.—MUTILATION OF BOOKS — REFERENCE — QUALIFIED REPORT — TESTIMONY — TRIAL WITHOUT OBJECTION — OBJECTION UPON APPEAL.—Where the books of the agents were mutilated, rendering an accounting difficult, and the case was referred and the referee made a qualified report, which was treated as a *prima facie* showing of indebtedness, and the referee and other witnesses were examined, and cross-examined by defendants' counsel, and the case was tried without objection on the theory that the report of the referee was properly before the court, and that his written statements and oral testimony were evidence in the case, and defendants having permitted the trial to proceed and the case to be submitted on this theory, are bound by it, and cannot be permitted to raise for the first time on appeal an objection which could have been obviated if made in the court below.

ID.—CONTRACT WITH AGENTS—CHARGE OF PERCENTAGE FOR RETURN PREMIUMS ON SURRENDERED POLICIES.—Where, under the contracts with the agents, they were to have thirty-five per cent of the gross premiums received by the company in their territory ''after deduct-

ing all return premiums, rebates and insurance,'' they were properly chargeable in their accounts with all "return premiums" on surrendered policies after they had been credited with thirty-five per cent of the full amount of the premiums on insurance written by them, and these commissions on the "return premiums" are chargeable against the sureties on their bonds as well as against the principals. This contemplates a continuance of the accounts after the termination of the agency for the purpose of charging commissions on return premiums and rebates.

ID. — DEDUCTIONS FOR REINSURANCE. — Deductions for reinsurances should only be for those effected during the existence of the agency.

ID.—ACCOUNTS WITH SUB-AGENTS.—The agents are responsible for the payment of sub-agents, and the commissions of the sub-agent is a matter between the agents and the sub-agents, with which the company had no concern, and this item should not be taken into account at all in the accounts between the company and its agents. But where in closing up business written by the agents, the premiums for which had not been collected prior to the termination of the agency, the company did not collect the full premiums, but so much of them as remained after deducting the commissions of the sub-agents due from the agents, such commissions were properly chargeable to the agents as an item of expense required to be paid by them.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

E. W. McGraw, for Appellant.

Reddy, Campbell & Metson, Campbell, Metson & Campbell, Edward K. Taylor, and Thomas H. Breeze, for Respondents.

SLOSS, J.—On March 10, 1894, the plaintiff, an insurance corporation, entered into a written agreement with the defendants, A. M. Warren and J. B. Lanktree, whereby said Warren and Lanktree were appointed general agents of the company for the Pacific Coast from April 15, 1894. One of the conditions of the appointment was that the agents should give to the plaintiff a bond in the sum of twenty thousand dollars to secure the due performance of their duties, and such bond was accordingly executed and delivered by A. M. Warren and J. B. Lanktree as principals and J. D. Maxwell, A. A. Warren and William P. Jones as sureties.

The agency terminated on May 1, 1895, and this action was brought on the bond to recover $12,976.07, claimed to have been collected by Warren and Lanktree for the plaintiff and to be due from them upon the termination of the agency. The defendant A. M. Warren was served but did not appear, and his default was never entered. The defendant A. A. Warren was never served. The defendants Lanktree, Jones, and Maxwell appeared and answered, denying that Warren and Lanktree had failed to account for and pay over to the plaintiff any moneys received by them for it. Findings and judgment went in favor of the defendants who had appeared. The plaintiff moved for a new trial, which was denied, and now appeals from the judgment and from the order denying its motion for a new trial.

On the appeal from the judgment the plaintiff contends that some of the findings are insufficient in form, and that there is a failure to find upon one material issue. In the view which we take on the other appeal we consider it unnecessary to pass upon these points.

The motion for new trial was based on the alleged insufficiency of the evidence to sustain the findings to the effect that the defendants Warren and Lanktree "did account for, pay over and deliver to said company and its authorized agents all of the money that came into their hands which belonged to the said company, and every part and portion thereof, over and above all commissions and allowances due to them, said Warren and Lanktree, and over and above all payments made by them for said plaintiff," and "that said Warren and Lanktree did not collect, receive or retain, and that they do not retain, and did not at the time of the commencement of this suit retain, the sum of $12,976.07 of the moneys of plaintiff, or any sum or moneys whatever belonging to said plaintiff." An examination of the statement on motion for new trial convinces us that these findings have no substantial support in the evidence.

The agreement under which Warren and Lanktree were acting for the plaintiff, after stating that said Warren and Lanktree have been appointed by the said Milwaukee Mechanics' Insurance Company as its general agents and supervisors for its Pacific Coast department, contained the following stipulations:

"2. All agents' commissions, salaries, clerk hire, office, traveling and adjusting expenses, rents and telegrams to be paid by said Warren and Lanktree, excepting taxes, board fees, costs of litigation, and all company blanks, policy registers, expressage for supplies to agents only, and other supplies necessary to the business, which are to be paid and furnished by the said company and which are to remain the property of said company.

"3. As compensation for such services as general agents and supervisors, the said Milwaukee Mechanics' Insurance Company agrees to pay to or allow Warren and Lanktree to retain 35 per cent of the gross premiums received by said company in the territory hereby denominated the Pacific Coast department, after deducting all return premiums, rebates and reinsurances.

"4. The said Warren and Lanktree agree to . . . keep accounts of agents, collect and remit all balances of accounts, as collected, and for moneys received by them, to the company by draft. Said Warren and Lanktree to give a good and sufficient bond with approved sureties for $20,000 thereby securing the said company for all premiums reported and moneys received in their department. No premiums to be left uncollected and unpaid for a longer term than ninety days from the first of the month following the month in which they were written.

"5. A contingent commission of 5 per cent of all the net profits realized by said company from business done within the territorial limits and places aforesaid; said net profits to be ascertained by deducting from gross premiums on policies and certificates of insurance underwritten for said company on property located within the territorial limits and places aforesaid, the amounts paid out and allowed by said company for losses, commissions, return premiums, reinsurances, cancellations, licenses, taxes of any kind, and all other local and general agency expenses. The said contingent commission shall be computed and paid on the 15th day of October, 1895. If this contract shall not be renewed, the contingent commission then due on the above date shall be computed by said company by charging up to loss account 50 per cent of the premiums upon policies then in force, and at the expiration of all policies of insurance in force, after deducting for any

losses and return premiums, the balance, if any, shall be paid to Warren and Lanktree. This contract to remain in force for the term of one year, to wit: from the 15th day of April, 1894, to the 15th day of April, 1895, with the privilege to either party hereto to terminate the same at any time by giving sixty days' notice.''

The bond sued upon was in the sum of twenty thousand dollars, and after reciting the appointment of Warren and Lanktree and their duty to keep true and accurate accounts of the property of the company coming into their hands, and of their receipts and disbursements on account of the company, provided that if ''the said A. M. Warren and J. B. Lanktree shall well and truly perform all and singular the duties of general agents of said company, and shall account for and pay over and deliver to the treasurer of the said company, or to such other person as the said company, or its authorized agent, may direct, all such moneys, property, documents, supplied books and papers, and stationery of the said company, as shall come to and be in their possession, or actual control at the time, and in the manner which may now or hereafter be provided by charter or rules of the said company, or by direction of its board of directors, or of the president or acting president of the said company, . . . then this obligation shall be void, otherwise of force.''

From the statement on motion for a new trial, it appears that when the case came on for hearing, the plaintiff offered in evidence the deposition of G. W. Mansfield, superintendent of agencies of the plaintiff company. Mr. Mansfield testified that he came to San Francisco in the early part of April, 1895, to examine the condition of the company's affairs and its general agency. Up to the 15th of May he was endeavoring to secure from Warren and Lanktree a statement of their accounts with the company. On the 17th of May, on arriving at the office of Warren and Lanktree, he was informed that the vault of that firm had been entered during the night and the books of account had been cut and mutilated to such an extent as to make it impossible to state an accurate account from them, and no complete statement of account was in fact ever given by Warren and Lanktree. The witness produced copies of the monthly accounts which had been sent to the company at its home office by Warren and Lanktree dur-

ing the continuance of the agency. These accounts showed the total amount of business written, the premiums due on the same, the commissions credited to Warren and Lanktree upon the basis of the total business written, and the expenses chargeable to the company. They did not show the amount of premiums actually collected. Plaintiff then called as a witness one Thomas, bookkeeper for Warren and Lanktree, who testified to some extent regarding the mutilated books, pointing out in detail the pages that had been removed from such books. At this point in the trial the court made an order appointing George W. Reynolds referee, "to make an accounting and take evidence and report the same to the court." This order was made on May 12, 1898. No further proceedings appear to have been had in court until January 21, 1901, when, as appears by the statement, the hearing was resumed, and there was presented and read to the court a report of the referee. This report points out at considerable length the difficulties encountered by the referee in the making up of an account between the parties, such difficulties arising from the mutilation of the books and from a loose method of keeping the accounts of Warren and Lanktree. Accompanying the report the referee submitted to the court several tabulated statements showing the condition of the accounts between the plaintiff and Warren and Lanktree, so far as the referee was able to trace them. These statements, however, were declared by the referee not to be final, but to be subject to the instructions of the court as to certain points involved in the taking of the accounts. As they stood, the statements of the referee showed that Warren and Lanktree were indebted to the plaintiff in the sum of something over nine thousand dollars. Thereupon the referee was questioned at great length by counsel on both sides and by the court, and at the close of his examination other witnesses were called and the case was finally submitted to the court.

The contention of the respondent is that inasmuch as the case was referred to the referee to state an account, and as he never did state a final account, there was no evidence whatever before the court and nothing upon which a finding in favor of the plaintiff could be predicated. Probably it would have been better practice, in view of the fact that a reference had once been made, for the court to either resubmit the mat-

ter to the referee, with instructions to make a final report based upon such directions as to the manner of making the accounts as the court might see fit to give, or, if the court decided to hear the matter itself, to vacate the order appointing the referee, and proceed to take testimony. Neither of these steps was taken. What seems to have been done was that the referee made his partial or qualified report, and then testified as a witness regarding the items of his account, and that upon this testimony, and that of other witnesses, the court made its findings. If this procedure was irregular, we think the respondents are in no position to take advantage of such irregularity. No objection was made by them to the course followed. All of the parties in the lower court appear to have proceeded upon the theory that the referee's statements of account attached to his report were to be taken as *prima facie* showing of an indebtedness of some nine thousand dollars due from Warren and Lanktree to the plaintiff, and that further testimony—i. e. that of the referee himself and of other witnesses—was to be taken to increase this apparent balance. or reduce it, as the case might be. After the referee had submitted his report, a colloquy took place between court and counsel, the court stating in effect that the report of the referee made out a *prima facie* case in favor of the plaintiff to the extent of nine thousand dollars, and that counsel for defendants could take up, one by one, the items charged against Warren and Lanktree, and seek, by eliminating some of them, to reduce or extinguish this apparent balance. The only answer made to this by counsel for defendant was a request for a continuance before commencing the examination of the referee. The continuance was granted, and when the hearing was resumed the referee was cross-examined on the lines indicated by the court. At a later period in the proceedings the court repeated substantially the same suggestion without dissent from either party. And still later the court said to counsel for plaintiff, "Now Mr. Reynolds has presented his report and he has made a *prima facie* case for you to an amount that I understand is satisfactory. Now why not let Mr. Campbell (counsel for defendants) have him as a witness?"

No objection was made by counsel for the defendants to any of these statements of the court. He acquiesced in them

and proceeded to examine the referee and the other witnesses on the lines suggested. There can be no question that the case was tried in the court below upon the theory that the report of the referee was properly before the court, and that the written statements of the referee, as well as his oral declarations in court, were evidence in the case. The defendants, having permitted the trial to proceed and the case to be submitted for decision upon this theory, are bound by it and cannot be permitted to raise for the first time on appeal an objection which could have been obviated if made in the court below. It has often been held by this court that where both parties have in the trial court treated a certain question of fact as being in issue, and offered evidence regarding it, the point that there was no such issue presented by the pleadings is waived and cannot be raised on appeal. (*Horton* v. *Dominguez,* 68 Cal. 642, [10 Pac. 186]; *Murdock* v. *Clark,* 90 Cal. 247, [27 Pac. 275]; *Klopper* v. *Levy,* 98 Cal. 525, [33 Pac. 444]; *Burnham* v. *Stone,* 101 Cal. 164, [35 Pac. 627]; *Illinois T. & S. Bank* v. *Pacific Ry. Co.,* 115 Cal. 285, [47 Pac. 60]; *Barbour* v. *Flick,* 126 Cal. 628, [59 Pac. 122]; *Willey* v. *Crocker-Woolworth National Bank,* 141 Cal. 508, [75 Pac. 106].) The principle governing these cases is applicable here. Strictly speaking, the referee's partial report and his explanations regarding it may not have been proper as evidence, but they were admitted without objection and were treated by both sides as evidence in the case. If the defendants had excepted to the report of the referee when it was presented, or had made any objection to the referee being examined as a witness to establish any of the items in the account, or had asked that the matter be resubmitted to the referee, with instructions to report a full account, the plaintiff could have protected itself by taking steps to have the hearing proceed in a manner conforming completely to the proper practice. After both parties have gone to a hearing in the lower court upon the understanding that the report of the referee was before the court as making a *prima facie* case, and that further evidence was being heard for the purpose of confirming or setting aside the particular items of that report, it would be the height of injustice to permit the respondents, who assented to that procedure, to now claim that the method pursued was not the proper one, and that there was in

CL Cal.—23

fact nothing before the court.   (21 Ency. Plead. & Prac. 664.)

It appears from the record that in a number of instances, where policies had been written by Warren and Lanktree, return premiums were paid by the company after the termination of Warren and Lanktree's agency. In making up his statements of account the referee charged to Warren and Lanktree thirty-five per cent of these return premiums, and there was a good deal of discussion in the lower court as to the propriety of this charge. Under the contract it is clear that Warren and Lanktree were chargeable with these payments. The agreement under which they were appointed general agents provided that as compensation for their services they were to receive thirty-five per cent of the gross premiums received by the company in their territory "after deducting all return premiums, rebates and reinsurances." The term of their agency was one year. It is a matter of common knowledge that most policies of fire insurance are written for a term of not less than one year, many extending over three years. In the natural course of business, therefore, policies written after the day upon which the agency commenced would extend beyond the duration of the agency. The insured had a right to surrender their policies at any time prior to the expiration of the period of insurance, and to receive a return of a proportion of the premium corresponding with the unexpired term. (Civ. Code, sec. 2617.) In Warren and Lanktree's own accounts, and in those of the referee, they had been credited with thirty-five per cent of the full amount of the premiums on insurance written by them. Under the terms of their contract they were, however, entitled to this thirty-five per cent only on the amount of the premiums "after deducting all return premiums, rebates and reinsurances." Certainly it was never understood by the parties that if Warren and Lanktree wrote a policy on the day before the expiration of their agency, they would be entitled to retain thirty-five per cent of the entire amount of the premium, even though on the day after they ceased to be agents the policy was cancelled by the insured and the company compelled to return the greater part of the premium. It was necessarily in the contemplation of the parties that return premiums might be payable after the termination

of the agency, and the right of Warren and Lanktree to retain thirty-five per cent of the premiums on any business written by them was always subject to the contingency that the policy might be canceled and that they might, therefore, be liable to the company for thirty-five per cent of the amount refunded by the company upon such cancellation. (See *American Steam Boiler Ins. Co.* v. *Anderson,* 6 N. Y. Supp. 507, [57 N. Y. Sup. Ct. Rep. 179].) If it be said that under this construction there could be no final settlement of account on the termination of the agency, it may be answered that the contract plainly shows that such immediate settlement was not within the purview of the parties at the time the contract was made. Under paragraph five, Warren and Lanktree were entitled to a contingent commission on the profits of the company, to be computed and paid on the fifteenth day of October, a number of months after the termination of the contract. Again, by paragraph four, they were allowed ninety days within which to collect premiums. Clearly, then, it was in the contemplation of the parties that their relations should not be capable of final adjustment immediately upon the close of the agency.

These commissions on return premiums are chargeable against the sureties on the bond as well as against the principals. It is true that by the terms of the undertaking the sureties made themselves liable only for the payment by Warren and Lanktree of such moneys, etc., of the said company "as shall come to and be in their possession or actual control." They could not be charged with premiums earned but not collected. But where premiums had actually been collected, the proportion of them that belonged to the company was to be determined by the contract of agency, and, as we have seen, such proportion was to be computed by deducting, as commissions of the agents, not thirty-five per cent of the gross premiums, but thirty-five per cent of the balance remaining after payment of "return premiums, rebates and reinsurance." While the sureties were liable only for moneys actually received by Warren and Lanktree during their agency, the amount payable by Warren and Lanktree out of such moneys could not be ascertained at the termination of the employment, but might be increased by subsequent cancellations, and consequent reduction of the commissions apparently earned.

In this view of the rights of the parties under the contract and bond, the statements and testimony of the referee, together with the testimony of the other witnesses, make it clear, and that without any conflict, that Warren and Lanktree were indebted to the plaintiff in a considerable amount, for money actually received and unaccounted for.   Just what that amount was it is not proper here to attempt to state, since upon this appeal we can go no further than to order a new trial.   It is sufficient here to say that the careful analysis of the evidence presented by the appellant in its brief shows that under any view of the testimony there was an indebtedness of several thousand dollars due from the defendants to the plaintiff.   The respondents do not attempt to point out any error in these calculations, but content themselves with the claim, heretofore disposed of, that there was no evidence at all before the court, and argue as to the actual figures presented by the referee and other witnesses, that the statements presented were so confused that no conclusion could be reached from them.   With this view we cannot agree. The court had before it statements of all of the transactions of Warren and Lanktree as agents, and these statements, if examined in the light of the contract and the bond, were sufficient to enable the court to arrive at a determination of the amount due from Warren and Lanktree and their sureties to the plaintiff.   That some amount was so due is, as we have said, clear, and is practically not disputed by the respondents.   The court below, therefore, erred in finding that Warren and Lanktree had fully performed the conditions of their contract, and that there was nothing due from them. Upon a new trial the state of the account between the plaintiff and Warren and Lanktree should be determined in view of the construction which we have herein given to the contract.

Something may be said regarding other points which may arise on a new trial.   As to reinsurances, we think only those effected during the agency of Warren and Lanktree should be considered as operating to reduce their commissions, and, as we understand appellant's brief, it claims no more than this.

Under the terms of the bond the defendants were not chargeable with premiums on business written by Warren and Lanktree, where such premiums were not collected by Warren

and Lanktree, but came into the hands of their successors. Under the contract of agency, however, Warren and Lanktree were entitled to a credit of thirty-five per cent of such premiums—i. e. of so much of said premiums as might remain to the company after deducting return premiums, whenever paid, and premiums paid for reinsurances effected by Warren and Lanktree.

There appears to have been a good deal of discussion at the trial regarding commissions paid by Warren and Lanktree to sub-agents. We see no reason why this item should be taken into account at all. Under paragraph two of the contract the sub-agents' commissions were to be paid by Warren and Lanktree. Where a sub-agent acting for them wrote a policy and remitted to them the premium, deducting his commission, such agent was acting not as the agent of the company, but as the agent of Warren and Lanktree, and, as between the latter and the company, Warren and Lanktree were chargeable with the whole premium, and were to be credited with thirty-five per cent of the whole. The commission of the sub-agent was a matter between Warren and Lanktree and such sub-agent, with which the company had no concern. Where, however, in closing up business written by Warren and Lanktree, the premiums for which had not been collected prior to the termination of their agency, the company collected not the full premium, but so much of it as remained after deducting the commissions of the sub-agents due them by their agreement with Warren and Lanktree, such commissions were properly chargeable to Warren and Lanktree as one of the items of expense which, under paragraph two of the contract, they were to pay.

By proceeding in accordance with the views herein indicated we think it will be possible on a new trial, notwithstanding the mutilation of the books of Warren and Lanktree, to state and prove an account which will show with substantial exactness the relation of the parties.

The judgment and order appealed from are reversed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.