[No. A019155. First Dist., Div. Two. Aug. 20, 1985.]

RAINIER CREDIT COMPANY, Plaintiff and Appellant, v.
WESTERN ALLIANCE CORPORATION, Defendant and Respondent.

258

**COUNSEL**

Edmund T. King II, Jan T. Chilton, Stephen L. Garber and Severson, Werson, Berke & Melchior for Plaintiff and Appellant.

Fred R. Brinkop, Kristi L. Pearce and Branson, Fitzgerald & Howard for Defendant and Respondent.

## OPINION

**JAMES, J.**\*—Rainier National Bank (the Bank) required as a condition of advancing certain loans that its borrowers insure the collateral they used to secure their loans. The Bank's loan agreement provided that the Bank could purchase insurance at the borrower's expense should the borrower neglect to obtain insurance. Because of the cost involved in determining whether insurance had been provided on each individual loan, the bank purchased a blanket policy to ensure that all collateral in which it had a security interest was insured. This blanket policy, however, had proved increasingly unprofitable to maintain.

Western Alliance Corporation (Westates) contacted Rainier Credit Company (Rainier) and proposed that they create a collateral insurance system for the Bank. Westates and Rainier agreed to set up a computer tracking system that could follow each loan made by the Bank and that would issue an individual policy to each borrower who failed to obtain insurance. The premium for this policy would be added to the borrower's loan payment to the Bank. Westates located an insurer, Premier Insurance Company (Premier), to write the insurance. Premier appointed Westates as its general agent and granted Westates a thirty percent commission on all insurance placed with Premier.

Westates and Rainier, each represented by counsel, proceeded to negotiate the terms of their agreement. During their contract negotiations, they discussed several ways of dividing the 30 percent commission available from Premier. The compensation to be paid Westates was consistently referred to as a "commission" in the contract drafts and accompanying correspondence. All parties agreed that the term "commission" implied an obligation to refund a pro rata share of premiums refunded to the insured even after the underlying commission agreement had been terminated. The parties finally decided that Rainier would collect the premiums and would remit directly to Premier 70 percent of the premiums collected. Westates modified its agency agreement with Premier to permit Rainier to do business directly with Premier and notified Premier that it would be paid its commission by Rainier. Rainier entered into an agency agreement with Premier.

*Assigned by the Chairperson of the Judicial Council.

In the final version of the Rainier-Westate's contract, which was prepared by Rainier's attorneys and executed on December 30, 1975, the term "commission" was changed to "compensation for services."[1] Witnesses for Rainier testified that they attached no significance to this alteration in language and believed that the two terms were equivalent. Most of Westate's witnesses testified that they did not consider the import of the change and that they did not consider or discuss Westate's obligations upon termination of the agreement. The only witness who attached any significance to this modification in terms was Westate's president and sole shareholder, Jesse Yohanan. Yohanan testified that the contract was read to him over the telephone before it was executed. At that time, he realized that under the final wording of the contract, Westates would not be obligated to refund any portion of the monies received if the agreement was terminated. Yohanan did not communicate his understanding of the meaning of the term "compensation for services" to Rainier.

The Rainier-Westates agreement was terminated on July 14, 1980. After that date, Rainier refunded monies to insureds who had purchased collateral insurance before July 14, 1980, but who subsequently cancelled their policies before term. Rainier requested that Westates repay to Rainier a pro rata share of the premiums refunded to the insureds by Rainier. When Westates refused this request, Rainier brought suit.

The matter was tried without a jury. The trial court found that the term "compensation for services" as used in the contract was not meant to imply the term "commission" and therefore the Westates-Rainier contract did not obligate Westates to pay the $260,000 sought by Rainier. Rainier appeals from that judgment.

■ The Westates-Rainier contract contained no express provision requiring Westates to make any payments to Rainier after the termination of their agreement. However, Rainier introduced evidence that the phrase "compensation for services" used in the agreement was understood by the parties to refer to a "commission." Within the insurance industry, a commission carries with it an attendant obligation upon the party accepting it to refund a pro rata share of that commission if any premiums are subsequently refunded to the insured. Rainier directed the court's attention to two Cali-

---

[1]The Rainier-Westates contract provided: "Rainier will pay Westates as compensation for its services hereunder an amount equal to the portion of the gross net commissions received by Rainier under the program which are in excess of Rainier's expenses in administering the program plus ten percent (10%) of the gross net premiums paid; provided, however, that in the event that during any monthly period hereunder the gross net commissions earned by Rainier, less the operational expenses of the program, are less than ten percent (10%) of the gross net premiums received by Rainier, Westates will reimburse Rainier for such deficiency."

fornia cases which have interpreted the term "compensation for services" to mean "commission" within the context of an insurance contract. (E.g. *Milwaukee Mechanics' Ins. Co.* v. *Warren* (1907) 150 Cal. 346, 355 [89 P. 93]; *National Union Fire Ins. Co.* v. *Nason* (1913) 21 Cal.App. 297, 300 [131 P. 755].) Westates, on the other hand, introduced evidence to show that the parties intended the phrase "compensation for services" to refer to a "fee," a payment for services rendered. The term "fee," as used within the insurance industry, carries with it no obligation upon the recipient to return any of the money it receives. It was clear at the conclusion of the trial that the term "compensation for services" was reasonably susceptible of more than one meaning and the trial court was called upon to decide the actual meaning given to the term by the parties when they entered into their contract.

■ Where a word or a phrase used in a contract can reasonably be understood in more than one way, the court must admit and consider extrinsic evidence to determine what the parties actually intended the word or phrase to mean. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) The court should not limit the "determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous" when the language is reasonably subject to multiple interpretations. (*Id.*, at p. 37.)

■ The court's statement of decision, however, specified that the court did not consider the extrinsic evidence presented when it determined what the parties actually intended the phrase "compensation for services" to mean. The court found the words of the contract to be clear and unambiguous and, therefore, found the extrinsic evidence to be irrelevant and inadmissible. The court concluded that the ordinary and reasonable meaning of the words used in the contract did not require Westates to refund any portion of this "compensation" to Rainier.[2] The trial court's exclusion of

---

[2]The following legal basis for the trial court's decision indicate that the court failed to consider extrinsic evidence as to the intended meaning of the terms used in the contract: "(3) Since the agreement between WESTATES and RAINIER has been reduced to a writing, the mutual intention of the parties is to be ascertained solely from the express terms of the writing. (4) The mutual intention of WESTATES and RAINIER is to be interpreted according to the ordinary meaning of the words used. (5) The ordinary and reasonable meaning of the words used in the agreement between WESTATES and RAINIER is clear and unambiguous. (6) The ordinary and reasonable meaning of the words used in the agreement between WESTATES and RAINIER does not give rise to an obligation on the part of WESTATES to refund any portion of its compensation after termination of the agreement. . . . (9) The agreement between WESTATES and RAINIER is clear and unambiguous on its face as to all rights, duties and obligations between the parties. . . . (11) The agreement between WESTATES and RAINIER is clear and unambiguous on its face as to all terms and conditions contained in the agreement. . . . (14) Extrinsic evidence regarding the terms and conditions of the agreement

extrinsic evidence on the issue of the meaning the parties actually intended "compensation for services" to connote was error.

■ Westates argues that this court should disregard the statement of decision since, in response to a motion for new trial, on the record in open court, the trial court denied that it had failed to consider extrinsic evidence in its interpretation of the contract. However, it is significant that the trial court never modified its statement of decision in accordance with this oral pronouncement. (Code Civ. Proc., § 662.) Therefore, this court cannot now disregard the court's written statement of decision and base its determination of error on the court's oral explanation of its decision. (*Arenstein* v. *California State Bd. of Pharmacy* (1968) 265 Cal.App.2d 179, 188 [71 Cal.Rptr. 357].)

■ Although the law is clear that the "appellate court reviews the action taken by the trial judge, not his judicial reasoning or comment" (*Arenstein* v. *California State Bd. of Pharmacy, supra,* at p. 188), we undertake a review of the alternate legal basis of the trial judge's decision as expressed at the motion for a new trial. ■ We do this because reversal should be ordered only after a thorough review of the entire record to determine if it is reasonably probable that a result more favorable to Rainier would be reached in the absence of the error. Otherwise, such error will be found harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243].)

The court stated, at the hearing on a motion for new trial, that its judgment for Westates also was based on Rainier's failure to prove that the parties necessarily contemplated that a refund would be owed after termination of their agreement as required by *Milwaukee Mechanics' Ins. Co.* v. *Warren, supra,* 150 Cal. 346. This, however, is not a necessary element of Rainier's burden of proof. In *Milwaukee,* the California Supreme Court interpreted an insurance agency contract that provided "[a]s compensation for such services as general agents and supervisors, [insurer] agrees to pay . . . 35 per cent of the gross premiums received . . . ." (*Milwaukee Mechanics' Ins. Co.* v. *Warren, supra,* 150 Cal. at p. 349.) The court noted that an insured is entitled by statute to cancel its insurance policy at any time, and is entitled to receive a return of the portion of the premium paid

---

between WESTATES and RAINIER is not relevant or admissible to interpret the agreement since the agreement is clear and unambiguous on its face. (15) Extrinsic evidence regarding the respective rights, duties and obligations of WESTATES and RAINIER is not relevant or admissible to interpret the agreement since the agreement is clear and unambiguous on its face. . . . (17) The custom, practice and usage in the insurance industry with respect to an agent's or sub-agent's obligation to refund unearned commissions is not relevant or admissible to imply an obligation on the part of WESTATES to refund any portion of its compensation after the termination of this agreement."

which corresponds to the unexpired term of the policy.[3] It observed that there was no evidence that the parties intended the agent to retain the full amount of a commission paid on a policy purchased the day before the agent's agreement terminated and cancelled the day after. The court concluded: "It was necessarily in the contemplation of the parties that return premiums might be payable after the termination of the agency . . . ." (*Id.,* at pp. 354-355.)

Thus, where parties contract for the payment of commissions on the sale of insurance policies, it will necessarily be within their contemplation that pro rata refunds on unearned portions of the commission must be made, even after the commission agreement has been terminated, unless a contrary intent is expressed in the contract. A party seeking to enforce this obligation will not be required to prove that the parties necessarily contemplated this result.[4] The trial court's conclusion that Rainier could not prevail because it failed to show that the parties actually contemplated whether or not refunds would be paid after termination of their agreement does not support a judgment in favor of Westates.

At the hearing on the motion for new trial, the court also asserted that its decision for Westates was based on the legal maxim that an ambiguity in a contract will be construed against the drafter of the contract. (Civ. Code, § 1654.) This rule is to be used only when there is no extrinsic evidence available to aid in the interpretation of the contract or where the uncertainty cannot be remedied by other rules of interpretation. (*Decter* v. *Stevenson Properties, Inc.* (1952) 39 Cal.2d 407, 418 [247 P.2d 11]; *Jacobs* v. *Freeman* (1980) 104 Cal.App.3d 177, 189 [163 Cal.Rptr. 680].) The rule does not stand for the proposition that, in every case where one of the parties to a contract points out a possible ambiguity, the interpretation favored by the nondrafting party will prevail. The rule remains that the trier of fact will consider any available extrinsic evidence to determine what the parties actually intended the words of their contract to mean. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co., supra,* 69 Cal.2d 33, 40.)

---

[3]The court was here referring to Civil Code section 2617. This section has since been repealed and replaced by Insurance Code section 481. (Repealed by Code amends. 1873-1874, ch. 612, § 248, p. 258; Stats. 1935, ch. 145, § 13001, p. 778.) Insurance Code section 481 provides in pertinent part: "(a) Unless the insurance contract otherwise provides, a person insured is entitled to a return of premium if the policy is canceled . . . (2) Where the insurance is made for a definite period of time and the insured surrenders his policy, to such proportion of the premium as corresponds with the unexpired time . . . ."

[4]Rainier argues on appeal that this court can find Westates obligated to reimburse Rainier. As a matter of law, however, Rainier has not, proved that the parties intended the term "compensation for service" to refer to a "commission." There was also evidence that the parties intended the term to refer to a "fee." The meaning actually intended by the parties must be decided by the trier of fact before any duties implied in those terms can be determined.

Only in those instances where the extrinsic evidence is either lacking or is insufficient to resolve what the parties intended the terms of the contract to mean will the rule that ambiguities are resolved against the drafter of the contract be applied. (*Decter* v. *Stevenson Properties, Inc., supra,* 39 Cal.2d 407 at p. 418.) The court should not have applied the rule of construction set forth in Civil Code section 1654 before it considered the available extrinsic evidence to interpret the term "compensation for services."

■ The trial court failed to consider relevant extrinsic evidence in reaching its decision that the Rainier-Westates contract did not obligate Westates to refund a portion of the money it had received to Rainier. The alternative basis for the trial court's decision discussed at the motion for a new trial could not support a judgment in favor of Westates. A review of the record reveals that a significant portion of the evidence presented at trial supported Rainier's argument that the contract was an agreement to split a commission. Consequently, it appears reasonably probable that a different result would have obtained if the trial court had properly considered extrinsic evidence and, therefore, the judgment must be reversed. We remand the cause to the trial court for disposition not inconsistent with the views expressed herein.

Kline, P. J., and Rouse, J., concurred.