956 F.2d 274
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
SARL DE LA MOTTE, Plaintiff-Appellee,
v.
Steven HILGEDICK, Defendant-Appellant.
 No. 91-15156.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1992.
Decided Feb. 27, 1992.
 
 Before FLETCHER, D.W. NELSON and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Steven Hilgedick appeals the district court's finding that he was personally liable for breach of a contract among Sarl de la Motte ("La Motte"), a French Cognac producer, on one side, and Finlandia International Corporation ("Finlandia") and Hilgedick, on the other. The district court found that Hilgedick was bound as a principal under the contract.
 
 
 3
 We affirm.
 
 BACKGROUND
 
 4
 Steven Hilgedick, a businessman who had suffered business reverses and was looking for new opportunities, met Mirja Kajalo in 1983. Kajalo represented herself as the successful owner of a corporation which imported liquor from Europe.[1] Kajalo told Hilgedick about a potential opportunity to represent La Motte, a French Cognac producer. Hilgedick subsequently accompanied Kajalo on a trip to France to meet with La Motte.
 
 
 5
 In France, Hilgedick and Kajalo met with Mr. and Mrs. Bigot, the owners of La Motte; Mr. Bigot did not speak English, although Mrs. Bigot did. The Bigots were accompanied by Richard Hanoyan, apparently a French government employee in the area of trade facilitation, who was to assist the Bigots in negotiating agreements for the foreign distribution of their products. Eventually, Hilgedick, Kajalo and the Bigots decided to formalize an agreement under which Finlandia would purchase twenty containers of La Motte products and receive the exclusive right for one year to sell La Motte's wares in the United States.
 
 
 6
 The circumstances of the signing of the contract are in some dispute. First, the parties disagree as to the capacity in which Hilgedick signed the contract. The body of the contract does not mention him or his rights and duties. However, he did sign it. Bigot testified that he required that Hilgedick sign the contract because Hilgedick had agreed to finance the transaction on the buyer's side. Hilgedick asserts that the Bigots agreed to provide marketing assistance at the time they signed; Bigot testified that he made no such promise.
 
 
 7
 The contract is written only in French; apparently Hanoyan provided an oral translation to Kajalo and Hilgedick who signed it with the annotation, "read and approved." The contract is dated October 1, 1983.
 
 
 8
 La Motte agreed to ship six containers of its products to the United States immediately. In partial payment, Kajalo issued a post-dated personal check, which she asked the Bigots not to cash at that time. Eventually, Hilgedick arranged for the issue of a letter of credit for the balance of moneys owed for the containers; he personally guaranteed the loan taken out to finance the transaction.
 
 
 9
 The relationship between Hilgedick and Finlandia at the time of signing and thereafter is also in dispute. Hilgedick asserts Kajalo agreed to give him a one half interest in Finlandia in exchange for obtaining the financing. Kajalo asserts that the two had only come to some oral, "loose agreement" that she would take care of the marketing end of the deal while he would arrange financing, and that he would eventually receive some interest in her company in exchange for his participation. The district court found that the two eventually entered into a partnership agreement.
 
 
 10
 Kajalo had substantial difficulty in selling the liquor. In December of 1983, the Bigots travelled to California and met with Kajalo and Hilgedick. Apparently, joint marketing efforts were discussed at these meetings. Kajalo still had not deposited funds so that her check could be honored. In May, 1984, after failing to obtain payment on the check, La Motte terminated the agreement and sued Hilgedick and Finlandia for breach of contract.
 
 
 11
 Hilgedick cross claimed against Finlandia and filed a third party claim against Kajalo, as well as counterclaiming for fraud and other charges. Finlandia made no appearance. Kajalo sued Hilgedick, but the two eventually dismissed their claims against one another. In June, 1990, the district court granted La Motte's motion to dismiss its suit against Finlandia.
 
 
 12
 La Motte's suit against Hilgedick was tried to the court. The court found Hilgedick liable for breach of contract, and ordered him to pay damages in the amount of $29,520 (the amount of Kajalo's bad check) for the unpaid balance on the liquor La Motte had shipped and $179,388.92 representing La Motte's lost profit, as well as interest. Hilgedick appeals.
 
 STANDARD OF REVIEW
 
 13
 The interpretation of a contract is a mixed question of law and fact. L.K. Comstock & Co. v. United Eng'rs and Constructors, 880 F.2d 219, 221 (9th Cir.1989). "In general, factual findings as to what the parties said or did are reviewed under the 'clearly erroneous' standard while principles of contract interpretation applied to the facts are reviewed de novo." Id. "If the district court relies upon extrinsic evidence to interpret an ambiguous contract, that interpretation is a factual determination reversible only if the district court's construction is clearly erroneous or if the court applied an incorrect legal standard." Id. (citation omitted).
 
 DISCUSSION
 I. Hilgedick's liability under the contract
 
 14
 The district court found that Hilgedick "signed the contract in his individual capacity and is fully liable for its breach." In a footnote to its Order denying Hilgedick's motion to reconsider, the district court stated that Hilgedick was obligated "to provide financing for Finlandia's licensed importation of the goods, in exchange for a considerable expectation of profit sharing."
 
 
 15
 The district court did not set out in detail its reasoning in reaching this conclusion. However, it apparently found the contract to be ambiguous as to Hilgedick's role, and admitted parol evidence on this issue.
 
 
 16
 Under California law, whether a contract is ambiguous is a question of law. Brobeck, Phleger & Harrison v. Telex Corp., 602 F.2d 866, 871 (9th Cir.) (applying California law), cert. denied, 444 U.S. 981 (1979). If the court finds a contract to be ambiguous, the court may consider parol evidence as to its meaning. Pacific Gas & Elec. Co. v. G.W. Thomas Drayage Co., 442 P.2d 641, 644 (Cal.1968).
 
 
 17
 The district court correctly concluded the contract was ambiguous as to Hilgedick's obligations: the contract made no mention of his duties, but it nonetheless carried his signature. The court then looked to the witnesses' statements of the parties' intent in entering into the contract. Bigot testified that Hilgedick signed the contract because Hilgedick had agreed to obtain financing for the transaction. In addition, Kajalo testified that Hilgedick was to take care of the financial side of their performance, while she was to handle marketing. While Hilgedick's testimony was to the contrary, the district court adopted the other witnesses' version of events. Its conclusion that Hilgedick was bound under the contract was not clearly erroneous.
 
 
 18
 Nor did the district court commit clear error in finding that Hilgedick signed the contract in his personal capacity, rather than as an agent or officer of Finlandia. The district court correctly concluded that the contract was ambiguous as to the capacity in which Hilgedick signed it. Its signature block provides no clear answer as to Hilgedick's status. His signature appears on the same side as the company, underneath Kajalo's signature as Finlandia's president. It is preceded by the word "and"; the meaning of this word, in this context, is unclear. Hilgedick's name is in block capitals, like that of the company's, suggesting he is a separate, additional party. Thus, the contract does not provide any clear statement of Hilgedick's status.
 
 
 19
 Reviewing the testimony before it, the district court found that Hilgedick did not sign as a representative of Finlandia. Kajalo testified that no formal relationship existed between Finlandia and Hilgedick at the time the contract was signed. Bigot testified that he asked Hilgedick to sign because he believed Hilgedick was an investor who would finance the project; he had no understanding that Hilgedick represented Finlandia. Although once again Hilgedick testified to the contrary, the district court's decision to adopt the opposite position was not clearly erroneous.[2]
 
 II. Hilgedick's Defenses
 A. Fraudulent Inducement
 
 20
 Hilgedick argues that La Motte fraudulently induced him to enter into the contract by promising to provide cooperation and support in marketing La Motte's products in the United States. The district court rejected this defense.
 
 
 21
 In support of his argument, Hilgedick relies heavily on a telex sent to Kajalo by La Motte's representative, Richard Hanoyan, on November 3, 1983. Hilgedick cites the following passage:
 
 
 22
 5) WORKING TOGETHER: AS SAID BEFORE OUR PROJECT IS TO COME AND HELP YOU SELL DE LA MOTTE PINEAU AND COGNAC AND ALSO A PROGRAM OF VARIOUS WINES INCLUDING CLASSIFIED GROWTHS. PLEASE THINK ABOUT THE DIFFERENT POSSIBILITIES OF WORKING TOGETHER SO THAT WE CAN REACH A FINAL AGREEMENT WHEN WE COME TO VISIT YOU IN DECEMBER. ON OUR SIDE WE WILL ALSO STUDY DIFFERENT POSSIBILITIES.
 
 
 23
 Contrary to Hilgedick's argument, this telex does not prove there were promises of marketing assistance when the contract was made. The temporal reference, "as said before," could refer to a discussion that took place before the contract was signed, but it could also refer to one that took place some time between signing of the contract and before this telex. The reference to "our project" is vague and, again does not contradict the district court's finding that there were no promises of support. Rather, this telex suggests ongoing discussions of potential support by La Motte, the extent and nature of which had yet to be worked out: the telex refers to "different possibilities of working together" and an eventual "final agreement."
 
 
 24
 The evidence on which Hilgedick relies provides at best weak support for his position. We find that the district court's conclusion that there was no fraudulent inducement was not clearly erroneous.
 
 B. Illegality of the Contract
 
 25
 Hilgedick argues that even if he is liable under the contract, the contract is void and unenforceable because it would require him to purchase and market La Motte's products even though he did not have the liquor licenses the law requires. He contends that the contract thus had an illegal purpose. This argument is unavailing.
 
 
 26
 "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal.Civ.Code § 1643 (West 1985). Here, the contract can be interpreted to require that Finlandia, which possessed the proper licenses, purchase and distribute the liquor, although it was to perform its duties jointly with Hilgedick, who did not. Indeed, it would be difficult to reach an interpretation under which Hilgedick would be required to act alone. Thus, performance of the contract did not require any illegal action.
 
 
 27
 C. Commercial Impracticability and Frustration of Purpose
 
 
 28
 Hilgedick argues that the district court erred in finding that performance of his contractual duties was not impracticable. He also invokes the defense of frustration of purpose.
 
 1. Impracticability
 
 29
 Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.
 
 
 30
 Restatement (Second) of Contracts § 261 (1981). Generally, "a thing is impracticable when it can be done only at an excessive and unreasonable cost." 14 Cal.Jur.3d Contracts § 278 at 594 (1974).
 
 
 31
 The district court did not err in rejecting this defense. "Events that come within the rule stated in this Section are generally due either to 'acts of God' or to acts of third parties. ... Performance may be impracticable because extreme and unreasonable difficulty, expense, injury, or loss to one of the parties will be involved." Restatement (Second) of Contracts § 261 cmt. d. Hilgedick argues that performance by him was impracticable because of his lack of financial resources, Finlandia's refusal to cooperate and Finlandia's failure to provide him with stock in the company. He thus does not point to an "event" making performance unexpectedly and unreasonably difficult or costly. Insofar as Hilgedick's difficulties in performing are the result of Finlandia's failure to cooperate, he cannot invoke this defense. "Even if a party contracts to render a performance that depends on some act by a third party, he is not ordinarily discharged because of a failure by that party because this is also a risk that is commonly understood to be on the obligor." Id. at cmt. e; see also Hensler v. City of Los Angeles, 268 P.2d 12, 21 (Cal.Ct.App.1954) ("One who binds himself to a contract which cannot be performed without the consent or cooperation of a third person is not relieved of liability because of his inability to secure the required consent or cooperation.").
 
 2. Frustration of Purpose
 
 32
 Hilgedick also cites the Restatement section on frustration of purpose:
 
 
 33
 Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or circumstances indicate the contrary.
 
 
 34
 Restatement (Second) of Contracts § 265. Hilgedick cannot rely on this defense. The defense of frustration of purpose "arises when a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract." Id. at cmt. a; see also, Federal Leasing Consultants v. Mitchell Lipsett Co., 150 Cal.Rptr. 82, 84 (Cal.Ct.App.1978) (lessor of burglar alarm system could rely on defense of frustration of purpose when, subsequent to installation of the system, the government prohibited use of that kind of system). Here, no event occurred to make La Motte's performance worthless to Hilgedick and thus discharge his obligation.
 
 
 35
 In conclusion, the district court did not err in holding that under the contract Hilgedick was bound as a principal. It correctly rejected each of the defenses to enforcement he sought to invoke.
 
 
 36
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In fact, Finlandia's corporate status subsequently was suspended retroactive to October 1, 1982, for failure to pay appropriate state taxes
 
 
 [2]
 At trial and on appeal, Hilgedick has argued that, with regard to the issue of his status and obligations, the contract is uncertain and should be construed against the drafter, La Motte. He cites California Civil Code § 1654, which provides, "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." However, "[t]his rule is to be used only when there is no extrinsic evidence available to aid in the interpretation of the contract or where the uncertainty cannot be remedied by other rules of interpretation." Rainier Credit Co. v. Western Alliance Corp., 217 Cal.Rptr. 291, 295 (Cal.Ct.App.1985). In this case, where parol evidence is available to interpret the contract, the section is thus inapplicable