[Civ. No. 6020. First Appellate District, Division One.—November 2, 1927.]

MAUDE L. GALT et al., Appellants, v. LELAND S. MURPHY et al., Respondents.

Raymond Perry for Appellants.

J. L. Smith and Robert B. Gaylord for Respondents.

PARKER, J., *pro tem.*—This is an appeal from an order granting defendants' motion for a nonsuit and judgment therein entered in favor of defendants and against plaintiffs.

The action was brought to recover damages suffered by plaintiffs through defendants' breach of their contract of lease, to wit, failure to give possession.

The defendants answered jointly though at the trial and on the appeal defendant Paddon appears through separate counsel.

The facts as appearing here and in the court below follow: In December of 1922 or thereabouts one Thomas L. Ricks, an agent or representative of a real estate firm, called upon Leland S. Murphy, defendant, in search of an apartment house that he might lease for a client. Murphy advised him that he had just such a place as was desired, and thereupon gave to Ricks a statement covering said house, showing what the house could be made to yield and also the amount of rent demanded. Ricks in due time communicated these facts to the plaintiffs in whose interests, it seems, he was endeavoring to find a suitable location. After negotiations and investigation on January 26, 1923, a lease of the premises was prepared and executed by defendant Verne Clarke, as lessor, and plaintiffs, Maude L. Galt and Joseph C. Bianchi, as lessees. The term of the lease was for a period of five years commencing on March 1, 1923, with rent reserved at the rate of $770 per month. This lease further provided that the lessees should execute and deliver to lessor a chattel mortgage upon the furniture as security for the payment of the rent.

On the same date and as a part of the same transaction another agreement was entered into between the parties concerning certain improvements to be made in the premises

and the sale of furnishings therein. By this latter agreement it was stipulated that the lessor should install elevators and hardwood floors and wall beds, the work to be started within ten days and prosecuted with reasonable diligence. The lessees in this instrument agreed to purchase for the stipulated price of $1,500 the furnishings of the premises therein, at the time, consisting of linoleums, etc. The tenants agreed to deposit with the landlord the sum of $5,000 as an evidence of good faith and as security for the performance on the part of the tenants of all the provisions of the lease. From this amount the first month's rent of $770 was to be deducted and paid when due, and also the sum of $1,500 covering the price of furnishings. The balance of $2,730 was to be retained by the landlord as security for performance of lease until the tenants gave the landlord a chattel mortgage as security in lieu thereof, such chattel mortgage to be a first lien on complete and adequate furnishings for and installed in not less than fifty-five rooms, and such furnishings to be owned absolutely by tenants free from lien. When the mortgage, as specified, should be executed and delivered then the moneys held as security should be returned to tenants.

There arose some discussion as to the form of this deposit of $5,000. The tenants represented that in the place of cash they could deposit Liberty bonds to the amount required. This was acceptable to all with the exception that it was stipulated that $1,000 cash should be deposited to provide for the payment of the rent when due, and that an additional $100 in bonds should be deposited to compensate depreciation in face value of the bonds offered. Accordingly, on January 29th there was deposited the sum of $1,000 in cash and Liberty bonds in the amount of $4,100.

At the time of the deposit a receipt was given to the tenants, and this receipt was embodied in an instrument containing a clause as follows: "It is understood and agreed by both parties that this lease is given subject to Verne Clarke acquiring title and to her being able to install an elevator as per terms of the agreement, and Verne Clarke agrees to return the security not later than two weeks from date providing she is not able to give this lease, and Maude L. Galt and Joseph C. Bianchi agree to accept same and not to hold her responsible in any way." This last instrument

dated January 29, 1923, was signed by Verne Clarke and Joseph C. Bianchi.

Throughout the entire transaction all writings, including lease agreement and receipt acknowledgment, were signed by Verne Clarke as lessor. The names of defendants Murphy and Paddon at no time or place appeared in the instruments. The evidence disclosed that at the time of the negotiations and throughout the defendant Verne Clarke held merely a deposit receipt indicating some payment on the purchase price of the premises involved. This is all of the title held by her or any of the parties defendant. The evidence further shows that in the entire transaction the defendant Verne Clarke had no real interest nor any interest, even of the slightest. Verne Clarke was a stenographer and bookkeeper employed by one Wood, with which latter Mr. Murphy, defendant herein, shared an office. In her own language she was simply a ''dummy'' in the transaction. The money she paid on the purchase was not her money and she did not know who advanced it. Her entire connection with the affair was to permit the use of her name in the instruments referred to. She took no part in the negotiations other than to sign the various documents when asked, and plaintiffs knew her exact status. She was not an agent for the other defendants. She was as though nonexistent; as she states, a ''dummy.'' This is the contention of the appellants here and the theory upon which they present their appeal. Accepting this without further discussion it is apparent that as to her the nonsuit was properly granted.

As to the defendant Paddon the evidence was not sufficient to connect him in any way with the transaction. It was not shown that he and defendant Murphy had any other joint interests or ever represented themselves as being associated. The ''dummy'' never acted for him at any time, and no relationship or privity is shown between Paddon and the defendant Clarke. Paddon never received any money or other thing of value nor did he ever enter into any agreement, oral or otherwise, with the plaintiffs or either of them or either of the defendants. All that plaintiffs offer as against Paddon is the testimony of Ricks that Murphy told him there was another man associated with him in the deal, and that on two occasions during negotiations Paddon was present, though there is no evidence

of his participation therein other than it appeared that once or twice Murphy asked his opinion generally, and Paddon expressed his ideas answering Murphy. The plaintiff Galt testified that she never saw Paddon at all, and the co-plaintiff Bianchi was not called. At the time when the agent for plaintiffs took Murphy and Paddon out to view the furniture upon which chattel mortgage was to be given Paddon remained outside in the car.

Without further dilating upon or analyzing the testimony offered as against Paddon, it is apparent that the order of nonsuit as to him was properly granted. If under this evidence he could be forced to a defense it would be needless in the future to specify the parties defendant in any action. It would suffice to merely file a complaint and then go out on the byways and usher in the first man met and compel him to show that he has no interest or liability in the proceeding.

This leaves the issue here as between plaintiffs and the defendant L. S. Murphy.

In support of the order appealed from it is contended that in order to hold Murphy there must be evidence of some written authorization to Verne Clarke in order that the relationship of principal and agent may be created or inferred. We are not disposed to enter into a discussion of this point for the reason that its determination is unnecessary to this opinion. We have accepted appellant's theory of the situation, from the evidence adduced, that the acts of Clarke were the acts of Murphy, described at the time by all parties to the transaction as the real actor and party in interest. We will therefore for the purpose herein take up the case from appellants' standpoint upon the assumption that throughout the entire negotiations and transactions the acts of defendant Clarke "dummy" were the acts of defendant Murphy. It is the evidence of plaintiffs that they knew Clarke was the dummy and a mere name, as it were, for Murphy.

The Civil Code of this state, section 1642, reads as follows: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

In the case at bar plaintiffs testify that at the very time of negotiating the lease and as a part of the transac-

tion and before its execution by defendant the parties made the agreement looking to the installation of elevators and the purchase of furnishings, and that thereby the security was essential to justify these alterations; that the deposit of security was a part of said transaction, and that a change in the terms of the lease followed the deposit. All of these instruments were executed within a period of three days and at a date more than a month in advance of the period from which the term of the lease was to commence, All were between the same parties, and each had reference to the same subject matter. Prior to the deposit the lease was of no effect, and the defendants in the absence of the deposit were in nowise bound to further proceed. The agreement of January 29, 1923, contained the provision hereinbefore quoted. This was plain and unambiguous and stated that the lease was dependent upon title vesting in lessor and her ability to install the elevator, and that lessor agrees to return the deposit not later than two weeks from date if not able to give lease, and plaintiffs agree to accept return of deposit and not hold lessor responsible in any way.

The facts are that on or about February 15, 1923, defendant informed plaintiffs of his inability to proceed and offered return of deposit, which plaintiffs refused to accept. Later, on April 9, 1923, plaintiffs demanded return of the deposit, and it was so returned on April 10, 1923.

▇ Appellant points out that the agreement of January 29, 1923, referring to return of deposit was signed by Bianchi alone and not by plaintiff Galt, and therefore not binding on her. The plaintiff Galt testified that Bianchi was her partner authorized by her to make the deposit, that he was a party to the lease jointly with her. It needs no citation of authority on the point that as a partner, in matters concerning the partnership, one partner may bind the partnership. The testimony of plaintiff Galt is: ''The money and bonds were Bianchi's, not mine. We were partners. I never saw the receipt, not until two or three months after. Mr. Bianchi never told me anything about it. He was my partner. I did request the return of the bonds and cash when I saw I could not get possession, and the bonds and cash were returned to me and Mr. Bianchi by Mr. Perry (Mr. Perry is the attorney for plaintiffs). I have

received back the bonds and cash at my request." The present action was commenced shortly thereafter.

■ Appellants contend that there was no consideration for the agreement of January 29th, and further that it is incumbent on defendants to show impossibility of performance thereunder.

In answer to the first objection the agreement is taken as part of the original transaction, and would find ample consideration therein to support it. Aside from this the new agreement of security in lieu of the chattel mortgage and the increased burden of construction would likewise be sufficient consideration to support the written agreement.

■ We do not think the cases cited on impossibility of performance apply here. In the instant case the agreement was that if lessor got no title and consequently was not able to give the lease the deal ended upon return of the deposit. There is no showing that the lessor ever got the title or was able to give the lease, but there is the showing that plaintiffs took the benefit of the provision and secured a return of their deposit. The plaintiffs agreed in these words as to return of deposit: "to accept the same and not hold lessor responsible in any way." They did accept the same after their demand for it, and the judgment of the trial court fulfills for them the remaining part of the obligation, namely, not to hold lessor responsible in any way.

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 30, 1927, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 29, 1927.