CURTIS, J.
 

 This action is one in condemnation instituted by the People of the State of California to condemn for highway purposes a strip of land situated in the city of Santa Barbara. The title to the land was at the commencement of the action, and for some years prior thereto had been, in the Southern Pacific Company. Said land is located adjacent to the right of way of said company. During the early part of the year 1925, the defendant Ganahl Lumber Company began negotiations with the Southern Pacific for a site in the city of Santa Barbara upon which to establish a lumber yard for the sale at retail of lumber and other building materials. As a result of these negotiations a lease was entered into by the Southern Pacific Company and the defendant, the Ganahl Lumber Company, for all that portion of lot 538 of the city of Santa Barbara lying northerly of the right of way of said railroad company. The Southern Pacific Company further entered into an agreement to construct a spur track connecting its main line of tracks with the property leased by it to the lumber company. These two instruments while bearing different dates were delivered simultaneously by the railroad company to the lumber company. The date of such delivery was February 15, 1926. The written lease provided that the term of said lease would be for a term of one year from December 1, 1925, and thereafter, if the lumber company continued to hold over, it did so under a month to month tenancy. The rental was $50 per month. Under the terms of the spur track agreement the railroad company was to construct a spur track at the expense of the lumber company and at a cost of $2,600. However, a concession was made to the lumber company in the sum of $1,016.21 on the cost of this spur track to be repaid the lumber company by a rebate of $2 for each carload of freight shipped over said spur track until said sum of $1,016.21 had been paid. It will be seen that some time elapsed between the commencement of said negotiations and the final consummation thereof by the delivery of said lease and spur track agreement. This delay was not occasioned by the fault of either party to said lease
 
 *504
 
 but principally by reason of certain zoning restrictions, which until removed prevented the use of said leased premises for business purposes. Upon the delivery of said two instruments, the railroad company constructed said spur track and the defendant lumber company entered upon said leased premises and erected thereon a planing mill and a retail lumber and building supply plant, together with equipment and fixtures necessary to operate said mill and plant. These buildings and improvements were erected at a cost of approximately $40,000 and upon their completion were used by defendant in operating said planing mill and carrying on a retail lumber business. The premises were so used when this action in condemnation was instituted. On January 22, 1934, the Southern Pacific Company served notice upon defendant of the termination of said lease. The effective termination of said lease according to said notice was February 28, 1934. In April following, this action was commenced to condemn for highway purposes a portion of said leased premises and on June 6, 1934, the state highway commission took actual possession of that portion of said leased premises which the plaintiff sought by this action to condemn, and commenced the construction of a state highway thereon. On June 8, 1934, the defendant lumber company and the Southern Pacific Company entered into a new lease whereby the Southern Pacific Company leased to defendant for the monthly rental of $50 per month, that portion of said leased premises not sought to be condemned, together with adjoining land in an adjacent block, the effective date of said new lease being June 1, 1934. The other terms of said new lease were substantially like those contained in the first lease. The buildings and improvements upon that portion of the leased premises sought to be condemned were removed therefrom onto the newly leased premises. The spur track agreement was not in any way affected by this change in location of defendant’s mill and plant, but by a supplemental agreement defendant continued to use said spur track in the operation of its business after said change as it had used it before, and the same rebate of $2 per car was allowed to defendant for each carload of freight shipped over said spur track. The case came on for trial before the court without a jury, and resulted in a judgment for damages in favor of
 
 *505
 
 the defendant lumber company in the sum of $25,092 besides interest. Prom this judgment the plaintiff has appealed.
 

 During the progress of the trial, the court, over the objection of appellant, admitted in evidence certain conversation and correspondence between the respondent and officers and representatives of the Southern Pacific Company during the negotiations between these parties for said lease and spur track agreement, and prior to the delivery of said lease and agreement as hereinabove stated. This evidence was admitted on the theory that the lease and spur track agreement were in fact but one instrument and should be considered and construed together, and if so construed, the contract between the parties thereto was uncertain and ambiguous in respect to the length of the term of said lease contract. While the written lease provided that the term should be one year, and thereafter in event the lessee held over it would be under a month to month tenancy, the spur track agreement provided that the lessee should be allowed a rebate of $2 per car for all freight shipped over said spur track until the sum of $1,016.21 was paid. The evidence admitted over said objection of the appellant revealed the fact that this discrepancy in the two instruments had been the subject of much discussion between the parties to said instruments pending the negotiations for said lease. In one such conversation held between Mr. Ganahl, the president of the respondent, and a representative of the railroad company, Mr. Ganahl referred to the provision in the written lease limiting the term thereof to one year and thereafter to a month-to-month tenancy, and stated that such an arrangement would not serve the purpose of a permanent lease. Thereupon the representative of the railroad company replied that the railroad company had the printed form and all leases must be made on this printed form, but as the respondent was to be allowed a rebate on the cost of a portion of the spur track for each carload of freight shipped over said spur track, said representative asked how many ears the respondent would receive over the spur track. After some consultation between the parties it was estimated that the number would be fifteen a year. The representative of the railroad company then said, “Figure it out at 15 cars a year and on the basis of $1,100 refund to you, it would take 35 years before you would get your refund back” and he then added, “as long as you haven’t
 
 *506
 
 earned your refund, the Southern Pacific will never cancel your lease unless they need it for railroad purposes or you don’t pay your rent or don’t comply with the laws and city ordinances relative to such property”. Other and similar conversations were had between the president of respondent and representatives of the railroad and in each of them similar assurances were given respondent that the railroad company would not cancel the lease until the spur track agreement was ‘‘worn out”. In letters passing from officials of the railroad company to the respondent during these negotiations, references are made to respondent’s ‘‘permanent lease” or to its ‘‘permanent location”. This evidence if properly admitted tended to show that it was the intention of the parties to said lease and spur track agreement that respondent’s lease of said premises was to extend to the full limit of time required for the payment of said sum of $1,016.21. Prom this and other evidence, the trial court fixed the unexpired term at the date of the commencement of this action at 22 years and 11 months, and found that the respondent was the owner of said leasehold interest for said term of years and upon such finding gave judgment in the amount hereinbefore stated.
 

 Appellant now makes the contention that the court erred in finding that the notice of termination of said lease was ineffective and of no force and effect whatever and that at the commencement of this action the respondent was the owner of a leasehold interest in the land sought to be condemned having an unexpired term of 22 years and 11 months. This contention is predicated upon the assumption that the written lease of the parties provided after the first year of its term, only for a month-to-month tenancy and that this tenancy was terminated by the written notice given respondent by the railroad company on January 22, 1934. This contention brings up for consideration and answer the following questions: (1) Was the written lease the sole contract of the parties respecting the term for which said premises were leased, or should said written lease and the spur track agreement be construed together in determining the term of said lease? (2) If these two instruments are to be construed together in order to determine the intention of the parties as to the length of said term, are they as so construed, so uncertain and ambiguous as to permit the admission of parol
 
 *507
 
 evidence to explain their true meaning ? (3) If they are so uncertain and ambiguous as to admit of parol evidence, was the evidence so admitted, together with the terms of said instruments themselves, sufficient to support the findings of the trial court that the attempted termination by the lessor of said lease was of no force and effect, and that the lessee at the commencement of said action was the owner of a leasehold interest having an unexpired term, which the court found to be 22 years and 11 months in length ?
 

 In answering the first of these three questions, we think that an examination of the two instruments, the lease and the spur track agreement, can leave little doubt that they not only relate to the same matter but that the one is necessary to explain the other. In the first place they are between the same parties, and while dated at different times, they were delivered at the same time. They each refer and concern the same subject matter, to wit: The occupancy and use of the property of the lessor by the lessee. The value of the lease would be greatly impaired without the agreement and the agreement for the spur track would be utterly valueless to the respondent without the lease. Neither would in all probability have been executed' without the other. Taken together, they contain the complete agreement and understanding of the parties. The two instruments were executed for the purpose of achieving a single purpose. “Where two or more written instruments are executed contemporaneously, with reference to the other, for the purpose of attaining a preconceived object, they must all be construed together, and effect given if possible to the purpose intended to be accomplished. ’ ’
 
 (Burnett
 
 v.
 
 Piercy,
 
 149 Cal. 178, 189 [86 Pac. 603], citing Civ. Code, sec. 1642; 13 Cyc., p. 603; Devlin on Deeds, sec. 845.) (See, also,
 
 Galt
 
 v.
 
 Murphy,
 
 86 Cal. App. 516 [261 Pac. 751]; 6 Cal. Jur. 298.) From the facts as stated above and from the cited authorities, we are of the opinion that in order to ascertain the true intent of the parties to said transaction respecting the term for which the property was leased, it was proper, and in fact necessary, to consider both of said instruments, and in arriving at said intent, said lease and spur track agreement should be considered together as one instrument.
 

 Construing the two instruments together, as in our opinion it is our duty so to do, we find that in the lease proper
 
 *508
 
 the term thereof is fixed at one year, and in case of holding over after said year, a month-to-month tenancy is created, while under the spur track agreement, after providing that the $2 per carload rebate shall be paid by the railroad company semi-annually, the agreement further expressly states “said semi-annual payments shall continue until a sufficient number of cars at said two ($2.00) dollars for each carload of freight yielding road haul revenue to railroad and delivered on or shipped from said track for undersigned (respondent lumber company) or any other industry locating adjacent to said track, shall equal the cost of the portion of said track from the point of the initial switch thereof to the clearance point in the center line thereof”. It is agreed by both parties hereto that the cost of that portion of said track was the sum of $1,016.21. Here we have the lease providing for a month-to-month tenancy, after the first year, while the spur track agreement provides for the construction of a spur track to be used in connection with the leased premises at the cost of respondent as to a portion of said track, with an agreement on the part of the railroad company to repay to the lumber company said cost in semi-annual payments, which “semi-annual payments shall continue until a sufficient number of cars at said two dollars per car” shall equal the cost of the portion of the track for which respondent was to be reimbursed. These two statements are at utter variance with each other, and produce an ambiguity which justified the trial court in admitting evidence to explain the real meaning and intention of the parties in the execution of the two instruments. The rule is well settled that where a document contains conflicting and inconsistent provisions, extrinsic evidence may be resorted to in order to determine the intention of the parties.
 
 (Balfour
 
 v.
 
 Fresno Canal
 
 &
 
 Irr. Co.,
 
 109 Cal. 221, 225 [41 Pac. 876];
 
 Le
 
 mm v.
 
 Stillwater Land & Cattle Co.,
 
 217 Cal. 474, 481 [19 Pac. (2d) 785];
 
 Gallatin
 
 v.
 
 Markowitz,
 
 139 Cal. App. 10, 13 [33 Pac. (2d)
 
 424]; Kenney
 
 v.
 
 Los Feliz Investment Co., Ltd.,
 
 121 Cal. App. 378, 386 [9 Pac. (2d) 225];
 
 Raisch
 
 v.
 
 County of Monterey,
 
 140 Cal. App. 627, 634 [35 Pac. (2d) 587].) The rule is well stated in the ease of
 
 Balfour
 
 v.
 
 Fresno Canal & Irr. Co., supra,
 
 page 225, as follows: “If the language of the contract be, as defendant contends, plain and unambiguous, and susceptible
 
 *509
 
 of but one construction, then the objection was good, and the evidence properly excluded. If, however, the language employed be fairly susceptible of either one of the two interpretations contended for without doing violence to its usual and ordinary import, or some established rule of construction, then an ambiguity arises, which extrinsic evidence may be resorted to for the purpose of explaining. This is not allowing parol evidence for the purpose of varying or altering the contract, or of putting a different sense and construction upon the language from that which it would naturally bear, but for the purpose of showing the circumstances under which the language was used, and applying it according to the intention of the parties.”
 

 We now pass to the consideration of the evidence, both the extrinsic evidence admitted to explain the ambiguity in the lease and the spur track agreement, and these two written instruments themselves, to determine whether this evidence taken as a whole supports the finding of the trial court that the attempted termination of the lease was of no force or effect and that the lessee at the commencement of this action was the owner of a leasehold interest in said leased property for an unexpired term of 22 years and 11 months. If the lessee, the respondent herein, had only a month to month lease of said premises at the time the notice of termination was served upon it, then said notice was effective to terminate said lease, but if the term of said lease was controlled by the other considerations mentioned above, then the notice and the service thereof was ineffective for any purpose. The oral evidence which- has already been referred to shows without any conflict that the representatives of the lessor, the Southern Pacific Company, and the president of the respondent company, gave this matter their special attention, and said representatives of the railroad company expressly assured Mr. G-anahl, the president of respondent company, that as long as the lumber company had any unearned refund, the railroad company would never cancel the lease, or as expressed on a different occasion, the railroad company would never cancel the -lease until the spur track was “worn out”. This evidence, in our opinion, fully supports the finding of the trial court that the lease of said premises was more than a month to month tenancy at the time of the service of said notice, and accordingly
 
 *510
 
 the notice was ineffective for any purpose. At that time the rebates under the spur track agreement amounted to only $278, leaving a balance of $738.21. The court took the average rebate per year, and divided the sum of $738.21, by the amount of this average yearly rebate for the purpose of determining the length of time it would take to repay the full amount of said refund. The time thus ascertained was fixed as the length of the unexpired term of said lease which amounted to 22 years and 11 months. No question is raised by the appellant as to the correctness of this computation. It is conceded that if the computation is based upon the proper premise, the result is correct. In our opinion the court adopted the correct premise in thus fixing the terms of said lease, and its finding as to the length of the unexpired term of said lease and respondent’s ownership of said leasehold interest finds full support in the evidence.
 

 Appellant next contends that the respondent by entering into the new lease with the lessor consented to the termination of the old lease. The new lease was not executed until long after the commencement of this action and after the state highway commission had taken possession of the portion of the leased land sought to be condemned. Respondent was then in the position in which it either had to retire from business or seek a new location in which it could carry on. The fact that it leased land for its new location from the same company from which it had leased the premises covered by the old lease, had no bearing, as far as we can see, upon its old lease, or upon the amount in which it was damaged by being deprived of its leasehold rights by appellant.
 

 Appellant finally contends that the amount of damages was arrived at in a manner which was neither proper nor legal, and that said damages are excessive. Neither of these contentions has any substantial merit. Por some purpose not entirely clear to us, appellant relies upon and claims that the trial court refused to follow the case of
 
 City of Pasadena
 
 v.
 
 Porter,
 
 201 Cal. 381 [257 Pac. 526, 53 A. L. R. 679]. In the Porter ease the landlord and tenant were made defendants in a condemnation action instituted by the city of Pasadena. The property sought to be condemned was business property owned by Porter, and leased to her tenant. Only a part of this property was the subject of said con-
 
 *511
 
 damnation action. The judgment in condemnation, which was affirmed, provided that the value of the tenant’s leasehold interest in the property condemned should be paid to the tenant, and the latter should continue to pay to the landlord the entire rent called for by the terms of the lease for the full terms of the lease. In that case, however, the tenant did not own the building or other improvements on said leased premises, and had no interest therein except to use the land and improvement under the terms of his lease. Accordingly, he received nothing for any improvement upon the land condemned. In the present action, as we have seen, the tenant has constructed valuable improvements, and they were in use by the tenant upon the land at the time the condemnation action was commenced. These improvements consisted of buildings and fixtures affixed to the land, and the damage sustained by the respondent was to its leasehold interest with the improvements and fixtures thereon. We fail to perceive how the rule announced in the Porter case has in any way been violated by the judgment of the trial court in the present action.
 

 The findings of the trial court as to the amount of respondent’s damage are amply supported by the evidence. Not only respondent’s witnesses, but most of appellant’s witnesses, when asked to fix respondent’s damage under the assumption that its lease had some twenty-two years or more to run, named an amount equal to, and in most instances in excess of, the amount fixed by the court. The contention that the amount of damages is excessive is without merit.
 

 The judgment is affirmed.
 

 Langdon, J., Shenk, J., Waste, C. J., and Seawell, J., concurred.
 

 Rehearing denied.