[L. A. No. 21965. In Bank. Aug. 5, 1952.]

WILLIAM B. DECTER et al., Respondents, v. STEVENSON PROPERTIES, INC. (a Corporation) et al., Appellants.

408

Ben Gould for Appellants.

Averill C. Pasarow for Respondents.

EDMONDS, J.—By this proceeding for declaratory relief, William and Gerald A. Decter seek an adjudication of the rights of the parties under a written lease. The appeal of C. H. and M. L. Stevenson, husband and wife, challenges the judgment in favor of the lessees upon the ground that it is based upon evidence inadmissible to vary the terms of the written instrument.

Stevenson Properties, Inc., leased certain real property to William B. Decter, doing business as Decter Mannikin Company, for a term of five years, commencing September 1, 1946. One week thereafter, the parties executed a supplemental agreement.

The lease, as amended, provided in paragraph 1 that the premises were "to be used for the purpose of conducting and carrying on the business of manufacturing, *selling* and repairing *window display forms, figures, fixtures and* mannikins, *display backgrounds,* and for ~~no other purpose~~ *related purposes.*" (Additions by amendment italicized, deletions crossed through.) As amended, paragraph 8 provided: "Lessee further agrees to so conduct said business on said premises that the same shall not become a nuisance, and in accordance with all applicable regulations of city, municipal or other public authority; and shall maintain said premises at all times in reasonably good, clean and neat condition. *Provided, however, that if the operation of the type of business specified in Clause 1 hereof is determined, by duly constituted authority, to be contrary to Ordinance No. 90,500 of the City of Los Angeles, or any provision of the Los Angeles Municipal Code relating to zoning, the lease shall be terminated and the lessee excused and released from his obligations thereunder.*" (Additions by amendment italicized.)

The Decters alleged that the Zoning Administrator had notified them on August 19, 1946, that their operations were in violation of section 12.14 of the Los Angeles Municipal Code.

The notice stated that they would be required to discontinue the manufactuer of manikins within 15 days from its date. After receipt of this notice, the complaint stated, the Decters applied for a zone variance to permit a continuance of their business. In May, 1948, a variance limited to four years was granted.

Other charges of the complaint were that the zone variance was revoked as of June 30, 1949. The Decters notified Stevenson Properties, Inc., in writing, of the revocation, stating that they considered the lease to be terminated in accordance with its terms. They also informed the lessor of their intention to appeal from the order of revocation. The Board of Zoning Appeals affirmed the action of the administrator.

In conclusion, the Decters pleaded that an actual controversy exists between the parties as to whether the order of the Zoning Administrator terminated the lease. They requested the court to declare the lease terminated.

From various documents made a part of the complaint, it appears that the zone variance was granted "only insofar as such variance is necessary to permit the continued use of the existing building for the manufacture, wholesaling, distribution, and repair of window display mannequins, forms, and figures." Among the conditions placed upon the variance was a requirement: "That in no event shall any operations, activities, or fixtures, be conducted or maintained on the property involved which result in the emission of dust, smoke, soot, or fumes on the outside of the building in question or onto adjacent properties. Further, that such activities or operations which involve the creation of dust and fumes, etc., be conducted and controlled in such a manner through the use of adequate dust collection and filtering equipment that dust, fumes, and the like will not prove annoying to the occupants of adjacent properties."

The complaint also includes the findings of fact made by the Zoning Administrator as grounds for the revocation of the variance. He found: "Some operations involved in the manufacture and repair of mannequins and similar forms and figures result in the emission of fuzz, lint, dust, and fumes." Other findings were that diligent efforts made by the Decters have not successfully controlled such emission, with resulting annoyance to adjacent property owners. Additional corrective measures, he determined, would be ineffective or beyond the ability of the Decters to finance. Therefore, "since applicable conditions of the said variance

which were necessarily drawn for the protection of the adjacent properties have not been complied with," the variance was revoked.

By their answer, the Stevensons pleaded the dissolution of the corporation and the conveyance to them of the demised property. The granting of a zone variance was admitted, but the lessees' allegations concerning its revocation were denied on the ground of lack of information or belief.

More specifically, the Stevensons asserted that the lease has not been terminated; the Decters can conduct all, or a portion, of their business on the premises in accordance with the terms of the lease. According to the Stevensons, there has been no determination "by duly constituted authority" that the operation of the type of business permitted by the lease is contrary to any zoning regulations. They charged that the Decters deliberately and repeatedly violated the conditions of the zone variance with the intent of inviting its cancellation. They also accused the Decters of presenting their case at the hearing as to revocation in a manner to achieve that purpose. As a result of their conduct, it was said, the variance was revoked.

By cross-complaint, the Stevensons claimed rent for the month of June, 1949, in the amount of $400. Pursuant to a stipulation, the Stevensons later were permitted to file a supplemental cross-complaint asking for additional damages for rental accrued during the remainder of the lease.

The Decters, by answer to the cross-complaint, alleged the deposit with the lessor of $225 which, they said, should be applied to the June rental, and deposited $175 with the court. By stipulation, the allegations of the supplemental cross-complaint were deemed denied.

Upon trial, the following facts were stipulated: The lease and the amendments thereto were duly executed by the parties, the amendments having been prepared in the office of counsel for the Decters. The Mannikin company had been in possession of the premises prior to execution of the lease and continued in possession by virtue of it. At all times between August, 1946, and 1949, there were more than five factory employees working on the premises.

William Decter testified over objection that, prior to the execution of the lease, C. H. Stevenson frequently visited the premises and observed the manufacturing process employed.

While the terms of the lease were being considered by the parties, the Mannikin company received a notice from the Zoning Administrator that the use of the premises for "clay model making" was in violation of the Municipal Code. The notice stated that: "Any such use must be discontinued within 15 days from the date of this notice." Upon receipt of this notice, Decter said, he notified C. H. Stevenson of the difficulty and referred the notice to his attorney.

As a witness for the Decters, Karl Ourston, civil zoning investigator for the city planning department, related the conversation between him and their counsel. He quoted the attorney as saying that the busines conducted on the premises was not "clay model making" but the manufacture of papier mache manikins, 95 per cent of the business being retail.

Other testimony of Ourston was that the operation was contrary to zoning ordinances because of the number of employees. Within certain limits as to production methods and number of employees, he stated, it was permissible to engage in the manufacture and sale of manikins.

The evidence tends to show that, following the receipt of the notice of violation, the Decters altered their manufacturing operations in an effort to conform to the conditions of the variance. They changed from "dry sanding" to "wet sanding," considerably reducing the amount of dust generated.

Following application for, but prior to issuance of, the variance, they installed, at considerable expense, a paint spray booth with ventilating system designed to prevent the emission of dust. Following issuance of the variance, the Decters attempted to improve the ventilating system by installing a burlap trap and periodically filling it and the ventilator baffles with water. There is some conflict in the evidence as to whether the ventilator was operated for a prolonged period of time with the top removed.

The record further shows that in December, 1948, upon the complaint of an adjoining property owner, the Zoning Administrator conducted a hearing to determine whether the variance should be revoked. Thereafter, written notice of revocation was delivered to the Decters, to become effective June 30, 1949. The Decters notified the Stevensons of the revocation and of their intention to appeal from the determination. They invited the Stevensons to participate in the appeal. C. H. Stevenson and his attorney were present at the hearing before the Board of Zoning Appeals which resulted

in affirmance of the order of revocation. On the effective date of the order, the Decters vacated the leased premises.

The Stevensons attempted to introduce into evidence statements made by the attorney for the Decters at the hearing before the Zoning Administrator and on the appeal from his order. Objections to questions concerning such statements, and to the introduction of the transcripts of the hearings, were sustained. The objections were made upon the ground that the evidence offered was hearsay, incompetent and irrelevant. The excluded statements were to the effect that the Decters had done everything physically and financially possible to remedy the situation and that they sympathized with the complaining neighbors. At one point, the attorney said: "We do have a lease on the premises and if in our legal power to do so, we would try to get out and move somewhere else where we will not annoy these people."

The trial court found, among other facts, that more than five employees were engaged in the manufacturing process at all times since August 1, 1946, and that the Stevensons knew the nature and extent of the Decters' operations. It further found that the Decters were notified of a zoning violation on August 19, 1946, that they applied for and received a zone variance, and that the variance was thereafter revoked. The court specifically found that the Decters did not invite the revocation and that they had taken reasonable action to comply with the terms of the zone variance by altering their methods of operation.

Finding No. X reads in part as follows: "The Court finds that the operation of the type of business specified in paragraph 1 of the lease, as amended, on the demised premises, has been determined by duly constituted authority to be contrary to Ordinance No. 90,500 of the City of Los Angeles, and more specifically said operation has been so determined to be contrary to Section 12.14 of the Municipal Code of the City of Los Angeles.

". . . The Court further finds that in view of such revocation of said zone variance, plaintiffs are not able to conduct on the premises the business contemplated by the parties in their lease."

According to the findings, the Decters quit the premises "pursuant to said revocation." Therefore, the court said, the Stevensons are entitled to rent only up to and including June, 1949.

The court concluded that the Decters were entitled to a judgment declaring the lease, as amended, terminated and their obligations thereunder released. The Stevensons, it held, were entitled to judgment for $175 as the balance due on June rental. Judgment was entered accordingly.

The principal contention of the Stevensons is that evidence of the revocation of the zone variance and of their knowledge of the extent of the Decters' operations was improperly admitted. They further contend that revocation of the variance was not a determination which would terminate the lease. The finding to the contrary, they say, is not supported by the evidence. In addition, they argue that the complaint did not state facts sufficient to constitute a cause of action and that the Decters, having failed to plead ambiguity as the basis for reformation of the contract, are bound by the language of the lease. Objected to as being outside the issues raised by the pleadings are the findings that the Stevensons knew the nature and extent of the Decters' operations, the revocation prevented the Decters from conducting the business contemplated by the parties, and the business employed more than five workers in manufacturing. The Stevensons also contend that, because the Decters invited revocation of the variance, the revocation is not a ground for termination of the lease. The court erroneously excluded evidence of statements at the revocation hearings, they say, because the offer of evidence was within the issues raised by the answer.

The Decters reply that the revocation effected a termination of the lease in accordance with its terms, as amended. There was, they say, no error in the admission or exclusion of evidence.

The Stevensons contend that the parol evidence rule (Code Civ. Proc., § 1856) was violated by admission of evidence that they knew the nature and extent of the Decters' operations. According to them, the lease is unambiguous and no evidence may be admitted to vary its terms.

Contrary to their contention, however, the lease, as amended, is clearly ambiguous upon its face. It is impossible to determine from its provisions to what officials or tribunal the phrase "by duly constituted authority" refers. In like manner, it cannot be ascertained by reference to the lease alone what action or finding would constitute a determination that the operation of the business is contrary to zoning ordinances or code provisions. A further ambiguity is pointed up by the argument of the Stevensons that the Decters could have

conducted some of their operations, such as retail sales, upon the premises, despite revocation of the variance. The lease, however, refers in the singular to "the operation of the type of business specified in Clause 1." The purpose clause appears to call for the carrying on of a single, integrated business comprising "manufacturing, selling and repairing" of specified products.

"Once something has to be read into a contract to make it clear, it can hardly be said to be susceptible of only one interpretation. It would have been error for the trial court to read something into the contract by straining 'to find a clear meaning in an ambiguous document, and having done so exclude the extrinsic evidence on the ground that as so construed no ambiguity exists.' " (*Union Oil Co.* v. *Union Sugar Co.*, 31 Cal.2d 300, 306 [188 P.2d 470].) It is apparent that the lease, as amended, is not clear on its face, and, under the theory of the parol evidence rule that has been accepted by the majority of this court, evidence of the negotiations of the parties and of surrounding circumstances was admissible for the purpose of determining the meaning of its provisions. (*Mayers* v. *Loew's, Inc.*, 35 Cal. 2d 822, 829 [221 P.2d 26] ; *Union Oil Co.* v. *Union Sugar Co., supra; Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 761 [128 P.2d 665] ; Code Civ. Proc., §§ 1856, 1860; Civ. Code, § 1647.)

The Stevensons also object to the admission of evidence in regard to the revocation of the variance as constituting a violation of the parol evidence rule. However, that was an issue presented by the pleadings. As stated by the Stevensons, "The primary question on this Appeal is whether or not the Lease by its terms is terminated by revocation of the Zoning Variance." Evidence upon this basic question is obviously admissible, not to vary the terms of the lease, but to prove that the event contemplated by the parties when they executed the instrument had occurred.

According to the Stevensons, the revocation of the variance was not a determination which would terminate the lease. The trial court's finding to the contrary, they claim, is not supported by the evidence. They argue that, if uncertainty exists, the provision for termination must be resolved against the Decters, who drafted the amendments in question. It is not the function of the Zoning Administrator, they say, to determine whether any type of business legally may be conducted in any particular location; the Decters

could secure such determination only from the courts. Furthermore, they assert that the variance was simply permissive and granted only insofar as necessary to continue use of the building for purposes more limited than permitted by the lease. Neither the granting nor revocation of the variance, they conclude, constituted a determination that the operation of the business was contrary to zoning regulations.

Essentially, this argument appears to be based upon the premise that the evidence is insufficient to support the findings and judgment. In effect, the Stevensons contend that, as a matter of law, the evidence will not support an inference that the lease has been terminated by an event within the contemplation of the parties when they executed it. This contention has no support in the record.

The evidence tends to show that the parties were cognizant of an existing violation of zoning regulations by the operations as they were being conducted at the time the lease was executed. Immediately thereafter the lease was amended. It reasonably may be inferred that the amendment was intended by the parties to provide for a foreseeable risk which might result in frustration of the purpose of the lease. Such provision was essential if the Decters were to protect themselves against the existing risk of being forced to abandon their operations. (Cf. Lloyd v. Murphy, 25 Cal.2d 48, 54 [153 P.2d 47].)

The circumstances disclosed by the record also support the inference that the "operation" to be protected by the amendment was the existing method of conducting business. At the time the lease and amendments were executed, this operation was in jeopardy by virtue of the previous notice to discontinue business. It remained uncertain whether operations could continue until the zone variance was secured. The revocation of the variance thus reinstated the situation as it existed at the time the parties executed the lease and its amendments. Thereafter, the Decters could not continue with the integrated business purpose described in the lease without subjecting themselves to possible criminal prosecution. Under such circumstances, there was a reasonable basis for the trial court's conclusion that the revocation was the determination "by duly constituted authority" which the parties had contemplated when they executed the amendments. Where the construction given the contract by the trial court appears to be consistent with the true intent

of the parties, as shown by the evidence, its interpretation will not be overturned upon appeal. (*Universal Sales Corp. v. California Press Mfg. Co.*, 20 Cal.2d 751, 772 [128 P.2d 665]; *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757]; *Crillo* v. *Curtola*, 91 Cal.App.2d 263, 272 [204 P.2d 941].)

In view of the inferences which reasonably may be drawn from the evidence as to the intention of the parties, the Stevensons cannot secure the benefit of the rule that uncertainty must be resolved against the party who caused it. As stated in section 1654 of the Civil Code, the rule is applicable only "[i]n cases of uncertainty not removed by the preceding rules," among which is one that a "contract may be explained by reference to the circumstances under which it was made." (Civ. Code, § 1647.) Here no uncertainty remains to be resolved.

There is no merit to the contention that the complaint did not state facts sufficient to constitute a cause of action. The complaint alleged the circumstances surrounding the execution and amendment of the lease, the events resulting in a termination of business operations upon the premises, and the existence of an actual controversy between the parties as to their rights under the terms of the lease, as amended. The allegations were sufficient to state a cause of action for declaratory relief. (Code Civ. Proc., § 1060.) Likewise without merit is the related contention that failure to plead a mutual mistake of fact for reformation of the instrument prevents the court from construing it. An action for declaratory relief properly may include "a determination of any question of construction" arising under the instrument. (Code Civ. Proc., § 1060.)

The contention that certain findings are outside the issues raised by the pleadings is but a variation of other arguments by the Stevensons. Whether the lessor knew the nature and extent of the Decters' operations at the time the lease and its amendments were executed, and whether those operations were in violation of zoning regulations, were preliminary questions to be decided in determining what the parties meant by what they said. They were a part of the circumstances surrounding the making of the lease. The finding that the revocation prevented the Decters from conducting the business contemplated by the parties was material to the question of whether the event which would terminate the lease had occurred. Even if such findings

of evidentiary facts were unnecessary, they were not prejudicially erroneous. (*Forman* v. *Hancock*, 3 Cal.App.2d 291, 296 [39 P.2d 249].)

The trial court found that the Decters did not "violate the conditions of the variance obtained by plaintiff with the intention of inviting a cancellation of said variance." This finding was based upon conflicting evidence, which it was the duty of the trial court to resolve. Its determination thereon will not be disturbed on appeal. (*Pfingsten* v. *Westenhaver*, ante, pp. 12, 19 [244 P.2d 395] ; *Columbia Lab., Inc.* v. *California Beauty Etc. Co.*, 24 Cal.2d 114, 120 [148 P.2d 15].)

Finally, the Stevensons contend that the trial court erroneously excluded evidence of statements by counsel for the Decters at the revocation hearings and transcripts of those hearings. They argue that the evidence was admissible to prove the defense raised by the answer that the Decters had invited a cancellation of the variance by their conduct at these hearings.

However, the Stevensons do not now explain, nor did their offer of proof to the trial court show, the relevancy of such evidence to the issues in dispute. It is not alleged, nor does it appear from the record, that the Decters were required by the lease to seek a variance or to operate thereunder. On the contrary, the findings of the trial court, based upon the evidence, are to the effect that the parties contemplated a termination of the lease if the Decters could not continue their operations as they were being conducted at the time the lease and its amendments were executed.

There are no facts here shown which allow application of the equitable doctrine of "clean hands." The variance considerably restricted the operations contemplated by the parties and the Decters, if they had chosen, might have refused to comply with any of its provisions. Instead, according to the evidence, they attempted to meet its conditions. No fraud or unfair dealing would have been shown even if they finally had abandoned efforts to retain the variance in force. There is no evidence, or offer of proof, that the parties intended the Decters to obtain and perpetuate a variance under which their operations would be restricted.

The evidence offered was not admissible simply because it bore upon an allegation of the answer. To be ad-

missible, "[e]vidence must correspond with the substance of the material allegations, and be relevant to the question in dispute." (Code Civ. Proc., § 1868.) "Irrelevant matter, though pleaded, is still irrelevant." (*Crowell* v. *City of Riverside*, 26 Cal.App.2d 566, 583 [80 P.2d 120].) The materiality of evidence is a question of law and a wide discretion is left to the trial judge in determining its admissibility. (*Spolter* v. *Four-Wheel Brake Serv. Co.*, 99 Cal.App. 2d 690, 699 [222 P.2d 307]; *Moody* v. *Peirano*, 4 Cal.App. 411, 418 [88 P. 380].) His ruling thereon, in the absence of an abuse of discretion, will not be disturbed upon appeal. (*Estate of Ades*, 81 Cal.App.2d 334, 342 [184 P.2d 1].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

Carter, J., and Schauer, J., concurred in the judgment.