[Civ. No. 571.   Fifth Dist.   Apr. 27, 1966.]

MILLARD MEYERS et al., Plaintiffs and Appellants, v. HOUSING AUTHORITY OF STANISLAUS COUNTY, Defendant and Respondent.

Frad, Ruggieri, Brunn & Lacey, Phillip Millspaugh, Jr., and Charles K. Brunn for Plaintiffs and Appellants.

David G. Dunford for Defendant and Respondent.

STONE, J.—Plaintiffs-contractors appeal from the adverse portion of a judgment in declaratory relief construing their duties and obligations under a housing development construc-

tion contract. Defendant, Housing Authority of Stanislaus County, called for bids for the construction of housing units at two sites within the county. Plaintiffs were the successful bidders and entered into a single contract with defendant covering both projects. Although details differ for the work involved at each project, only one legal question is presented: Under the contract, are plaintiffs required to install sewer and drainage lines and manholes beyond the project limits? The trial court found that plaintiffs must make all plumbing installations shown on the drawings or mentioned in the specifications, necessary to make the projects useable.

The question arises because part of the sewer and drainage lines, connections and manholes shown on the drawings and necessary to connect the dwelling units to existing main lines, extend beyond the "contract limits," "property line," and "project limits" shown on the architectural plot plan. Plaintiffs contend the drawings delimit their responsibility to the designated boundaries. However, the lines and manholes are clearly shown on the drawings, and the plans indicate where existing 6″ lines are to be replaced by 8″ pipe. Furthermore, the fall or grade of the drainage line is indicated on the drawings, and a detail of the "off-site" storm drain anchor block is shown.

The drawings, standing alone, are ambiguous since they not only designate the limit lines upon which plaintiffs rely, but also designate sewer lines and installations necessary to complete each unit, that extend beyond the limits. ▮ However, the drawings constitute only one document in an integrated contract that provides: 'The Contract shall consist of the following component parts: (a) This Instrument, (b) General Conditions, (c) Special Conditions, (d) Technical Specifications, and (e) Drawings.''

▮ In determining the meaning of a contract all documents that are parts thereof must be construed together. (*Lucas* v. *Quigley Motor Co.*, 191 Cal.App.2d 152, 157 [12 Cal.Rptr. 442]; Witkin, Contracts (1965 Supp.) § 219, p. 67.) ▮ Hence the drawings must be interpreted in the light of the other documents incorporated in the agreement.

▮ To eliminate uncertainty in case of a possible discrepancy between the drawings and technical specifications, the general conditions provide that: "Anything mentioned in the Technical Specifications and not shown on the Drawings, or shown on the Drawings and not mentioned in the Technical

Specifications, shall be of like effect as if shown on or mentioned in both. *In case of difference between Drawings and Technical Specifications, the Technical Specifications shall govern.''* (Italics added.)

The technical specifications, which prevail over the drawings, require that the contractor shall: ''b. Provide all materials and appurtenances necessary for the complete installation of each utility, whether or not all such materials and appurtenances are shown on the drawings or described in the specifications.''

The trial judge also noted that by the first paragraph of the contract plaintiffs agreed to furnish ''all labor, material, equipment and services, and perform and complete all work required for the construction of Low Rent Housing Projects CAL 26-6B, Patterson, consisting of Ten (10) dwelling units, and CAL 26-8, Westley, consisting of Twenty (20) dwelling units, together with necessary site development including but not limited to grading; paving; sewers; . . .'' This provision the trial judge interpreted as contemplating useable dwelling units which, of course, entailed sewers connected to the mains and storm drains connected to drainage facilities.

Special conditions in the specifications delineate work to be done by others at no expense to the contractor. The exempted work included the electrical distribution system to and including meters and street lighting systems, but not off-site plumbing, sewer or drainage facilities. Failure to include ''off-site'' plumbing in this itemization of facilities the contractor is not required to install means, conversely, that he is required to furnish them.

Plaintiffs argue if this court should conclude that the contract requires them to make the disputed plumbing installations, they are entitled to reimbursement on the theory of unilateral mistake. They cite *M. F. Kemper Constr. Co.* v. *City of Los Angeles,* 37 Cal.2d 696 [235 P.2d 7], but in that case the city had knowledge the contractor had inadvertently omitted a $301,769 item from a $780,305 bid *before* the bid was accepted.

In the instant case, plaintiffs' plumbing subcontractor testified that in order to submit the lowest bid possible he intentionally confined his bid to the limits shown on the drawings. He noted these limitations and restrictions on the bid he submitted to plaintiffs, thus giving notice to plaintiffs prior to the time they submitted their bid. Unlike the *Kemper* case, these

facts were not made known to defendant until after the bid had been let, the contract was signed, and construction was well under way. As pointed out by the trial judge, "Instructions to Bidders" provided that if a bidder is uncertain as to the interpretation of the specifications and drawings, he could secure verification of interpretation before bidding. The facts of this case are not apposite to those of *Kemper*.

The Supreme Court recently clarified the principles controlling review of a written instrument interpreted by the trial court, in *Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839]. At page 866 the court said "an appellate court must determine that the trial court's interpretation is erroneous before it may properly reverse a judgment." ▆▆▆ We cannot say, after an examination of the component documents that constitute the complete agreement, that the trial court's interpretation is erroneous.

Although in a memorandum opinion the trial court said that testimony concerning trade customs was not "particularly helpful," each side argues the weight of extrinsic evidence favorable to it. ▆▆▆ Since there is substantial extrinsic evidence that supports the findings and judgment, we are bound by the established rule that a reviewing court may not reweigh the credibility of conflicting extrinsic evidence. (*Parsons* v. *Bristol Development Co., supra,* at p. 865.)

▆▆▆ Plaintiffs and defendant both claim the benefit of Civil Code section 1654, which requires the language of a contract to be interpreted most strongly against the party who caused the uncertainty to exist, and admonishes that in a contract between a public officer or body and a private party all uncertainty will be presumed to have been caused by the private party. Defendant claims benefit of the presumption as a public body. Plaintiffs contend they overcame the presumption by proof that the uncertainty was caused by defendant public body, and thereby placed the onus of uncertainty on defendant.

The argument is moot, since the trial court interpreted the contract by reference to the various documents that comprise it. There is also extrinsic evidence that supports the trial court's interpretation, so that no uncertainty remains to be resolved by a presumption. (*Decter* v. *Stevenson Properties, Inc.*, 39 Cal.2d 407, 418 [247 P.2d 11].)

The judgment is affirmed.

Conley, P. J., concurred.